724 F.Supp. 443 (1989)
Kenneth R. BOHN, et al.
v.
The UNITED STATES.
Civ. A. No. 4-87-507-E.
United States District Court, N.D. Texas, Fort Worth Division.
October 16, 1989.
*444 John E. Collins, Dallas, Tex., for plaintiffs.
Wayne Hughes, Asst. U.S. Atty., and Marvin Collins, U.S. Atty., Fort Worth, Tex., for defendant.

ORDER
MAHON, District Judge.
This wrongful death and survival action was brought under the Federal Tort Claims Act,[1] 28 U.S.C. §§ 2671-2680, against Carswell Air Force Base Hospital ("CAFBH") arising out of the medical treatment of Douglas Bohn at CAFBH. The plaintiffs are Kenneth R. Bohn and Janice L. Bohn, parents of the deceased. After a trial to the Court held on June 12, 1989, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT
In November of 1984, Douglas Bohn informed his mother, Janice Bohn, of a small lump he had noticed under his right arm.
In December 1984, Douglas was still complaining of the lump which had grown more tender.
On December 3, 1984, Janice Bohn took her son to Primacare Minor Emergency Center in Grand Prairie, Texas where she worked as a staff nurse and center manager. At Primacare, Douglas was examined by Dr. Holcomb. Dr. Holcomb treated Douglas with antibiotics for the swelling and recommended a biopsy to determine what the lump was.
Douglas went to CAFBH on December 20, 1984. At CAFBH, Dr. Alfonso Villimizar performed a diagnostic excisional biopsy to remove the enlarged lymph node in the right axillary area  right arm pit area  on December 24, 1984. Dr. Villimizar excised a large mass measuring 7.5 cm. × 5.0 cm. × 4.5 cm. in size. No other significant nodes were found.
The pathologist at CAFBH, Gregory H. Ellis, then performed a tissue examination and diagnosed the mass as metastatic malignant melanoma.
Melanoma is a malignant cancerous tumor that arises on the skin and very rapidly progresses. It is a fatal disease. Metastatic malignant melanoma is melanoma that has spread to one or more areas beyond the skin. Melanoma can spread anywhere in the body  the brain, lungs, bones, liver, gastrointestinal tract, etc.  within a short period of time.
*445 Given the enormous size of the tumor, one would expect to have more disease.
On December 31, 1984, the Bohns were informed of Douglas' metastatic malignant melanoma. Dr. Villimizar informed the Bohns that Douglas had terminal cancer, but that he could live as long as five to seven years, or perhaps longer.
Arrangements were then made for proper tests to determine the extent the cancer had spread, the location of the primary lesion, and the "stage" of the cancer.
Because CAFBH did not have the facilities, Douglas had to have the tests performed at various clinics across the City of Fort Worth, Texas. The tests were performed in mid-January 1985 and took two and one half weeks to conclude.
The tests performed for obvious spread included a GI study, a head CT scan, a bone scan, a brain scan, a liver scan and a chest x-ray. All of these tests were negative.
Other tests  a dermatology and eye consultation  were performed to determine where the melanoma originated. The primary lesion was never found.
None of these tests described above can detect a microscopic spread of cancer.
Dr. Villimizar then referred the Bohns to the oncology department at CAFBH. On January 11, 1985, the Bohns met for a consultation with Dr. Ester Pollard. Dr. Pollard informed the Bohns that no treatment was immediately available and did not recommend further surgery. Dr. Pollard recommended a CAT scan and further recommended that they should wait and see if anything developed in the future. If something did develop, they could explore treatment such as radiation or chemotherapy at that time.
Towards the end of January, Douglas felt a lump in his right collarbone area. Dr. Villimizar performed a second, exploratory surgery on January 25, 1985 on the enlargement near the third rib.
The second surgery revealed no masses, tumors or lumps  only a prominent third rib.
The Bohns decided to obtain a second opinion. When they called CAFBH to transfer Douglas' records, Dr. Pollard recommended that they go to Wilford Hall, Lackland Air Force Base, a military hospital in San Antonio. The Bohns agreed and Dr. Pollard arranged an appointment for them at Wilford Hall.
On February 5, 1985, the Bohns went to Wilford Hall to get a second opinion on Douglas' condition.
After consulting with Drs. Messerschmidt, Eisenberg, and George, Douglas underwent a right node dissection on February 19, 1985. This surgery was to remove the entire right lymph node system in the right axillary area. The surgery was conducted by Dr. Eisenberg at Wilford Hall.
On February 18, 1985, the physicians at Wilford Hall found tumors on each of Douglas' lungs through x-ray. These tumors were still in the microscopic state and could not have been detected through x-ray or the other tests performed in early January of 1985.
The February 19, 1985 surgery revealed that six of the eight lymph nodes dissected tested positive for metastatic melanoma. Douglas underwent subsequent treatment before his death on October 10, 1985, including a bone marrow transplant, chemotherapy treatment, and radiation treatment after the cancer spread to his brain.
Melanoma which is in stage II of the disease has spread from the skin to an organ. The disease is in stage III when it has spread from the lymph nodes to other parts of the body.
At the time Douglas Bohn arrived at CAFBH on December 20, 1984, his cancer was in at least stage II.
"Metastatic" means the spread of any tumor to any one area or more. Metastatic malignant melanoma is melanoma that has spread to some site beyond the skin. It is "Stage III" melanoma-melanoma that has spread from the primary site on the skin, past stage II where it is in the lymph nodes and to other parts of the body. Stage III melanoma is a terminal disease.

*446 CONCLUSIONS OF LAW
The Court has jurisdiction under the Federal Tort Claims Act. 28 U.S.C. § 1346(b) and §§ 2671-2680.
In an action under the Federal Tort Claims Act, the Court will apply the substantive law of the state. The United States will be liable only if a private individual, under like circumstances, would be liable under state law. United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); Standefer v. U.S., 511 F.2d 101 (5th Cir.1975).
Because the alleged tortious conduct occurred in the State of Texas, the law of this State will apply.
The Texas survival statute[2] provides a cause of action for the heirs, legal representatives and estate of a deceased person.
The Texas wrongful death statute[3] allows parents of the deceased to recover damages.
Damages for loss of companionship and society and for mental pain and anguish are recoverable by a parent for the death of a minor child. Sanchez v. Schindler, 651 S.W.2d 249 (Tex.1983).
In order to prevail on their claim of medical malpractice, plaintiffs must prove, by a preponderance of the evidence, all of the following elements: (1) a legally cognizable duty requiring the defending party to conform to a certain standard of conduct for the protection of another against an unreasonable risk, (2) a failure by the defending party to conform to the required standard, (3) resulting actual injury to the complaining party, and (4) a reasonably close causal connection between the defending party's conduct and the plaintiff's resulting injury. Cloys v. Turbin, 608 S.W.2d 697 (Tex.Civ. App.  Dallas 1980, no writ).
Under Texas law, a treating physician has the duty to exercise that degree of care which a physician of ordinary prudence and skill, practicing in the same or a similar community would have exercised in the same or similar circumstances. Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779 (1949). This standard of care can only be proven by the expert testimony of other physicians as to how a reasonably careful and prudent physician would have acted under the same or similar circumstances. King v. Flamm, 442 S.W.2d 679, 681 (Tex. 1969). A physician who fails to undertake a mode or form of treatment which a reasonable and prudent member of the medical profession would undertake under the same or similar circumstances will be liable for the harm caused thereby. Hood v. Phillips, 554 S.W.2d 160 (Tex.1977).
Both plaintiffs and defendants presented competent expert testimony to demonstrate that degree of care which a prudent physician would have exercised under the circumstances presented by this case.
The evidence shows that when Douglas had been diagnosed as having metastatic malignant melanoma in late December 1989, the standard of care expected of a prudent physician in the community and under the circumstances was to act as follows:
(a) arrange for testing to determine the origin and severity of the cancer;
(b) recommend an excisional lymph node biopsy in the right axillary area where the tumor was found;[4] and
(c) perform steps (a) and (b) with the utmost priority and speed.
The undisputed testimony showed that the tests performed in early January were the proper tests to be performed. The testimony also showed that an excisional biopsy should have been performed as soon after the diagnosis was made and after the testing showed negative results. A biopsy *447 was not performed or even recommended until the Bohns sought a second opinion at Wilford Hall on February 5, 1985. Steps (a) and (b) were not performed with utmost priority and speed.[5] Dr. Pollard recommended no surgery but recommended that they wait to see what happens.
Drs. Villimizar and Pollard were treating physicians of Douglas and owed him a duty to conform to the standard of conduct described above. By not recommending an excisional biopsy of the lymph nodes and thereby delaying treatment for weeks, Drs. Villimizar and Pollard breached the standard of care expected of a prudent physician in these circumstances.
Plaintiffs now must prove by a preponderance of the evidence a close causal connection  a proximate cause  between the negligent acts and omissions described and Douglas Bohn's death.[6] To be a proximate cause of an injury, the negligent acts must have set in motion a natural and unbroken chain of events that led directly and proximately to a foreseeable injury or result. Hart v. Van Zandt, 399 S.W.2d 791 (Tex.1965).
Under Texas law, proximate cause consists of two elements: (1) cause in fact and (2) foreseeability. Farley v. M & M Cattle Co., 529 S.W.2d 751 (Tex.1975). To be a cause in fact, the act or omission must have been a negligent act or omission which was a substantial factor in bringing about the injury and without which no harm would have been incurred.[7] The foreseeability element is satisfied if the actor as a person of ordinary intelligence should have anticipated the danger to others created by his negligent act. Clark v. Waggoner, 452 S.W.2d 437 (Tex.1970).
The death of Douglas Bohn was a foreseeable injury from the danger imposed by the physicians at CAFBH by their negligent acts. However, the negligence of the physicians was not a cause in fact of Douglas' death. Douglas Bohn's death was the result of the terminal disease which he had when he arrived at CAFBH. The fact that the physicians breached the standard of care expected of them did not result in Douglas' death or the loss of a chance to live longer.[8]
Under Texas law, a medical expert can testify as to his opinion regarding the cause which produced or probably produced a certain physical injury. The plaintiff must show at least a reasonable probability that the plaintiff's injury was caused by the doctor's negligence.[9] The competent expert testimony showed that when Douglas presented himself to CAFBH, he had microscopic pulmonary metastases. This opinion is based on reasonable medical probability and is based on what the experts know of the disease, the tremendous size of the tumor extracted on December 24, 1984, and the subsequent manifestation of the cancer.
The evidence showed that because the tumor was so enormous much more disease was to be expected. The size of the tumor also gives rise to an overwhelming likelihood that Douglas already had microscopic spread elsewhere in the body. Moreover, the February 19, 1985 dissection revealed that six out of eight lymph nodes in the right axillary area were positive for metastatic melanoma. Additionally, on February *448 18, 1985, the physicians at Wilford Hall found tumors on each of Douglas' lungs through x-ray. These tumors were not detectable when Douglas was at CAFBH because they were still in the microscopic state and could not have been detected through x-ray or the other tests performed in early January of 1985. Although CAFBH performed the proper tests after the diagnosis, these tests cannot detect the microscopic spread of the cancer. The fact that the cancer manifested itself this quickly is evidence that it was in a metastatic state at the time Douglas first arrived at CAFBH.
Hence, even if the physicians had exercised the standard of care expected of them, the injury would not have been avoided. In other words, the negligence of the physicians at CAFBH was not a substantial factor, or a "cause in fact", in bringing about the injury.
The Court has expressed its firm opinion that the physicians at CAFBH were negligent. This negligence cannot be condoned. However, according to the law, the plaintiffs must prove that their injury was proximately caused by this negligence. Although plaintiffs have unquestionably suffered a terrible and tragic loss, injury alone is not enough. Nor is the mere presence of negligence and injury. Plaintiff is missing the essential element of proximate cause  without which they cannot prevail as a matter of law.
Because plaintiffs have failed to prove by a preponderance of the evidence that the negligence of the defendant was a proximate cause of their injuries, their action must fail.
To the extent that the foregoing findings of fact are considered conclusions of law, they are adopted as such. To the extent that the conclusions of law are considered findings of fact, they are adopted as such.
A judgment consistent with this Order will be entered herewith.
NOTES
[1] The Court has jurisdiction under 28 U.S.C. § 1346(b), which provides in pertinent part:

[T]he district courts, ..., shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ..., for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
[2] Tex.Civ.Prac. & Rem.Code Ann. § 71.021(b).
[3] Tex.Civ.Prac. & Rem.Code Ann. § 71.004.
[4] Plaintiffs' expert testified that an excisional biopsy was standard medical treatment under these circumstances. Metastatic malignant melanoma is a dangerous disease which spreads very rapidly. The fact that the tumor was metastatic indicated that the cancer had already moved from the skin into the lymph nodes. From the lymph nodes, the cancer moves into the blood stream and travels throughout the body. Defendant's own expert testified that a lymph node dissection is standard treatment for melanoma.
[5] Defendant's own expert testified that there was a delay: "It took them probably longer than usual to get to the point of doing the lymph node dissection, of sending him to Wilford Hall and doing the lymph node dissection. They really made the referral about five weeks later.... So they were moving along, maybe a little slower than I would like to see. But they were moving along." (Jones' Depo. at 34-35). "I think there was about a five-week period or so from the time that this lymph node was removed, which was around Christmas time, to the time that they made the referral to Wilford Hall potentially for a lymph node dissection. That's a little bit longer time than I'd like to see. I'd like to see all this kind of take place within two weeks or so." (Jones Depo. at 43-44.)
[6] See Missouri Pac. R.R. Co. v. Am. Statesman, 552 S.W.2d 99 (Tex.1977).
[7] Texas & Pac. Ry. Co. v. McCleery, 418 S.W.2d 494 (Tex.1967).
[8] See, Brownsville Medical Center v. Gracia, 704 S.W.2d 68 (Tex.Civ.App.  Corpus Christi 1985, writ ref'd n.r.e.).
[9] Gibson v. Avery, 463 S.W.2d 277 (Tex.Civ.App.  Fort Worth 1970, writ ref'd n.r.e.).