David JONES, Individually and as Next
Friend of David M. Jones, Jr., a
Minor, Relator

v.

The Honorable Elizabeth RAY, Judge of
the 165th District Court of Harris
County, Texas, Respondent.

No. 01–93–01031–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 25, 1994.

Francis I. Spagnoletti and David A. Bickham, Houston, for relator.

Frank B. Stahl, Jr., Diane M. Guariglia, John R. Strawn, Jr., Michael F. Hord, Jr. and Steve Gonzalez, Houston, for respondent.

Before OLIVER–PARROTT, C.J., and O'CONNOR and WILSON, JJ.

## OPINION ON MOTIONS FOR REHEARING AND FOR REHEARING EN BANC

OLIVER–PARROTT, Chief Justice.

Relator, David Jones, individually and as next friend of David M. Jones, Jr. (Jones), a minor, seeks mandamus relief from orders entered by respondent, the Honorable Eliza-

beth Ray, in cause number 92–030831. Relator brought that action against 31 defendants—all of whom were doctors, hospitals, or other health care providers—whose negligence, relator alleged, had combined to render Jones permanently quadriplegic. On October 8, 1993, respondent signed an order granting the motions for severance and the amended or supplemental motions to transfer venue filed by 18 of the defendants, thereby severing the causes of action against those 18 defendants, and transferring venue of those actions to Lubbock County, to proceed there under new cause number 92–030831–A. Relator asserts that respondent abused her discretion, and that he has no adequate remedy by appeal from this order. We agree. We construe the motions for rehearing en banc filed by certain of the real parties in interest[1] as motions for rehearing and, in the alternative, for rehearing en banc; we deny the motions for rehearing and rehearing en banc; withdraw our previous opinion; substitute the following opinion; and, as on original submission, we conditionally issue a writ of mandamus.

In his petition for writ of mandamus, relator gives the following account of his contentions in the underlying lawsuit. Jones was injured on July 17, 1989, while working as a roughneck at a drilling site in west Texas. On July 24, Dr. Zeeck operated on Jones's right knee, in Odessa, Texas. Jones remained under Dr. Zeeck's care thereafter, and complained to Dr. Zeeck of weakness in his right leg, tingling in his fingers, and pain in his neck. In May 1990, Jones fell at home, after which he gradually began losing the ability to walk. At that time, Dr. Zeeck referred Jones to Dr. Lehman, who diagnosed Jones as having a condition of his cervical spine that was causing his difficulty in walking. Jones then was sent to Lubbock, Texas, where he received medical evaluation

---

1. The parties seeking rehearing, labeled as in n. 2, *infra*, and the accompanying text, are: (3) Dr. Meyer; (4) Dr. Meyer's professional association; (7) Dr. Lester Wolcott, (8) Dr. Randall Wolcott; (9) Mr. Ricky T. Burrescia; (10) Rehabilitation Associates; (11) Rehabilitation Facilities Corporation; (12) South Plains Rehabilitation Associates, P.A.; (13) South Plains Rehabilitation Home Services, Inc.; (14) South Texas PM & R Associates, P.A.; (15) South Texas Rehabilitation Center, Inc.; (17) Sisters of Saint Joseph of Texas d/b/a St. Mary of the Plains Hospital and Rehabilitation Center; (18) Neurosurgical Unit; (20) Permian Basin Rehabilitation Center; (25) St. Mary Imaging Center, now denominated, on rehearing, "Lubbock Imaging Clinic, Ltd. d/b/a St. Mary Imaging Center," and (26) Scott Porter, M.D.

and treatment from Drs. Meyer, Islam, and Lester Wolcott, and from St. Mary of the Plains Hospital and Rehabilitation Center (St. Mary's). He spent approximately two months as an inpatient in Lubbock, during which he was treated by Drs. Meyer, Lester Wolcott, Randall Wolcott, and by Ricky T. Burrescia. On August 31, 1990, according to the affidavit of Sandy Goodloe, director of quality management for St. Mary's, he was discharged and sent back to Odessa for outpatient physical therapy. He continued to have difficulty in walking, and that condition continued to worsen. Accordingly, on November 30, 1990, Jones traveled to Houston, where Dr. McCammon (not a defendant) evaluated his condition, and admitted him to St. Luke's Episcopal Hospital (St. Luke's), where Dr. Harper (not a defendant) performed surgery on Jones's spine on December 7, 1990. After the surgery, Dr. Harper advised Jones that, although he would never recover full use of his arms and legs, to achieve maximum recovery, he should begin immediate physical therapy.

A few days later, while Jones was still recuperating at St. Luke's, a male nurse dropped him while attempting to lift him from bed. The nurse's bare hands came in contact with Jones's exposed surgical wound, which developed a serious infection within a few days. Treatment for the infection delayed the beginning of Jones's physical therapy for nearly two months. Jones further asserts in the underlying lawsuit that he is now permanently unable to walk.

Relator filed the underlying suit in Harris County on July 10, 1992, against (1) Dr. Zeeck, (2) St. Luke's, and (3) Dr. Meyer. Dr. Zeeck and St. Luke's filed their answers, neither of which incorporated or was preceded by a motion to transfer venue. Relator then amended his petition, naming 28 additional defendants.[2] Dr. Meyer and his professional association then filed motions to transfer venue and answers, as did 16 other defendants.[3]

2. Relator added (4) Dr. Meyer's professional association; (5–8) Drs. Lehman, Islam, Lester Wolcott, and Randall Wolcott; (9) Mr. Burrescia; and six entities relator asserted were owned and/or controlled by Dr. Lester Wolcott, including (10) Rehabilitation Associates; (11) Rehabilitation Facilities Corporation; (12) South Plains Rehabilitation Associates, P.A.; (13) South Plains Rehabilitation Home Services, Inc.; (14) South Texas PM & R Associates, P.A.; (15) South Texas Rehabilitation Center, Inc.; as well as St. Mary's, under two names—(16) St. Mary of the Plains Hospital and Rehabilitation Center; and (17) Sisters of Saint Joseph of Texas d/b/a St. Mary of the Plains Hospital and Rehabilitation Center.

Relator also added a number of other defendants whose relationship to his injuries is not precisely explained in the exposition in his petition for writ of mandamus: (18) Neurosurgical Unit; (19) Permian Neurological Center, P.A., an entity apparently connected in some way to Dr. Lehman; (20) Permian Basin Rehabilitation Center, in Odessa—where, according to its executive director's affidavit, Jones underwent physical therapy; (21) Jim D. Jenkins, Ph.D.; (22) Odessa Diagnostic Imaging Center, Ltd.; (23) Odessa Diagnostic Imaging Center, Inc.; (24) ODIC, Inc.; (25 and 26) St. Mary Imaging Center (where, according to its general manager's affidavit, an MRI was performed on Jones on May 11, 1990) and Scott Porter, M.D., a physician evidently associated with St. Mary Imaging Center in some way; (27 and 28) Diagnostic Radiology Associates and Jay Scherr, M.D., a physician evidently associated with it in some way; (29) Harry E. Hall, M.D., a physician evidently associ-

ated with St. Mary's in some way; (30) Odessa Physical Therapy, P.C.; and (31) Paula Elrod, evidently an employee of Odessa Physical Therapy, P.C.

Drs. McCammon and Harper, who treated Jones at St. Luke's, and the male nurse who dropped him, have not been made defendants in the suit.

3. The other defendants moving for a transfer of venue were (labelled as in n. 2, *supra*): (6) Dr. Islam; (7) Dr. Lester Wolcott; (8) Dr. Randall Wolcott; (9) Mr. Burrescia; (10) Rehabilitation Associates; (11) Rehabilitation Facilities Corporation; (12) South Plains Rehabilitation Associates, P.A.; (13) South Plains Rehabilitation Home Services, Inc.; (14) South Texas PM & R Associates, P.A.; (15) South Texas Rehabilitation Center, Inc.; St. Mary's, under only *one* of the two names in which it was sued—(17) Sisters of Saint Joseph of Texas d/b/a St. Mary of the Plains Hospital and Rehabilitation Center; (18) Neurosurgical Unit; (20) Permian Basin Rehabilitation Center; (25 and 26) St. Mary Imaging Center and Scott Porter, M.D.; and (29) Harry E. Hall, M.D.

Respondent's October 8, 1993, order refers to "Lubbock Imaging Clinic, Ltd. d/b/a St. Mary Imaging," while St. Mary Imaging Center refers to itself, in both its original answer and its motion to transfer venue, as "St. Mary Imaging Center, a Limited Partnership." Additionally, the order makes no mention, on its face, of Neurosurgical Unit's motion to transfer venue. Neither relator nor any of the real parties in interest responding to his petition for writ of

On January 19, 1993, respondent held a hearing on the motions to transfer venue, but, according to relator, declined at that time to rule on the motions, to allow the movants to file motions to sever the causes of action against them from the main cause number,[4] which they later did. Generally, the basis for the motions for severance was the assertion that relator's claim against St. Luke's and Dr. Zeeck involved completely distinct facts and issues and was wholly unrelated to his claims against the other defendants. Following an oral hearing held September 27, 1993, respondent signed the order complained of here, granting the severance and transferring to Lubbock County venue of relator's claims against the 18 defendant-movants.

TEX.R.CIV.P. 40, covering permissive joinder, says, in pertinent part:

All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* if any question of law or fact common to all of them will arise in the action.

(Emphasis added.)

TEX.R.CIV.P. 41, covering misjoinder and non-joinder of parties, says, in pertinent part:

*[A]ctions which have been improperly joined* may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are

just. *Any claim against a party may be severed and proceeded with separately.*

(Emphasis added.)

 For a severance to be proper, the following elements are necessary: (1) the controversy must involve more than one cause of action, (2) the severed cause must be one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed causes must not be so intertwined as to involve the same identical facts and issues. *Guaranty Federal Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *Ryland Group, Inc. v. White*, 723 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1986, orig. proceeding). When this three-pronged standard is applied, the proper approach is for the trial court not to receive or consider evidence on any of the matters incorporated in that standard, and in the absence of some special circumstance warranting a departure from that approach—such as the existence of a genuine and material issue about whether a party's assertions relevant to severance violate TEX. R.CIV.P. 13—the trial court should look exclusively to the live pleadings on file in determining whether to effect a severance. *See, e.g., Tunstill v. Scott*, 138 Tex. 425, 160 S.W.2d 65, 69 (1942) ("It is our opinion ... that the cause of action alleged in the petition is severable, or joint and several. We believe plaintiff's petition makes the suit primarily a tort action."); *Texoma Nat'l Bank v. First State Bank*, 653 S.W.2d 91, 92 (Tex. App.—Dallas 1983, no writ) ("An examination of the pleadings shows that the counter-claim arose out of an entirely different transaction and is not incidental to Texoma['s] cause of action."); *Burleson v. Finley*, 581 S.W.2d 304, 308 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.) ("An examination of the transcript shows that the suit involved two or more separate and distinct causes of action

mandamus have explained either discrepancy. We believe neither is of consequence to the disposition of relator's petition. We note, however, that (a) Neurosurgical Unit's motion to transfer venue is incorporated into a single instrument, along with the motions to transfer venue filed by Dr. Meyer, his professional association, and Dr. Porter, and (b) respondent's order does refer to each of those three defendants' motions. On that

basis, we assume, without deciding, that the claims against Neurosurgical Unit were included within the scope of respondent's October 8, 1993, order of severance and transfer of venue.

**4.** Relator had also filed a motion to continue the hearing, asserting that he not had been given 45 days notice, as required under rule 87(1) of the Texas Rules of Civil Procedure.

and was therefore subject to severance."); *Geophysical Data Processing Center, Inc. v. Cruz*, 576 S.W.2d 666, 667 (Tex.Civ.App.— Beaumont 1978, no writ) ("the propriety of joining and severing parties and actions in any legal proceeding is dependent primarily, although not always exclusively, upon the state of the pleadings relevant to such proceeding") and *Whitley v. King*, 227 S.W.2d 241, 244 (Tex.Civ.App.—Waco 1950, no writ) (same).[5] The record before us reveals no such special circumstance in this case.

A "cause of action" consists of a plaintiff's primary right to relief and the defendant's act or omission that violates that right. *Krchnak v. Fulton*, 759 S.W.2d 524, 526 (Tex.App.—Amarillo 1988, writ denied) (citing *Stone Fort Nat'l Bank v. Forbess*, 126 Tex. 568, 91 S.W.2d 674, 676 (1936)). The controversy here involves more than one cause of action, because relator plainly alleged in his fourth amended petition that, "The wrongful acts of the defendants, taken together, joined to cause David Jones to be a quadriplegic," and thereby violated his right against personal injury. In his petition for writ of mandamus, relator contends that he has asserted only one cause of action against defendants: medical malpractice.

Looking, however, to relator's fourth amended petition, he alleged at least the following wrongful acts: (1) Dr. Zeeck negligently failed to perform a diagnostic follow-through, once apprised of Jones's complaints of transient motor weakness and paresthesia;[6] (2–4) Drs. Lehman, Meyer, and Wolcott each negligently failed to direct that surgery should be performed on Jones; (5–7) Drs. Meyer and Wolcott,[7] and St. Mary's, each were negligent in directing Jones to undergo physical therapy; (8) the St. Luke's male nurse negligently dropped Jones and touched Jones's open surgical wound with his bare hands, infecting it; and (9–12) St. Luke's failed to staff its facility adequately, failed to train its nursing staff adequately, failed to properly supervise the nurses who were treating Jones, and failed to maintain the appropriate standard of care. Any of the severed causes of action—those based on the acts numbered one through seven here— would, standing alone, be the proper subject of an independent lawsuit.[8]

The severed causes must also not be so intertwined as to involve the same identical facts and issues. In his fourth amended petition, relator alleged a continuous course of treatment constituting one continuous transaction, jointly producing an indivisible injury. Accordingly, the damages, if any, suffered by Jones from the acts relator alleges in the severed claims, necessarily relate to and are intertwined with the damages he suffered from the alleged acts of the Harris County defendants. At a single trial of all

---

5. We note that, on the question of whether a trial court may receive and consider evidence in ruling on a severance, there are statements in several published opinions of this Court that imply, without actually stating, that a court may look outside the pleadings. *Carruth v. Shelter Air Syst., Inc.*, 531 S.W.2d 913, 915 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ); *Phillips v. Gulf & South American Steamship Co.*, 323 S.W.2d 631, 632 (Tex.Civ.App.—Houston 1959, writ ref'd); *Armstrong v. City of Houston*, 272 S.W.2d 556 (Tex.Civ.App.—Galveston 1954), *rev'd on other grounds sub nom. City of Houston v. Culmore*, 154 Tex. 376, 278 S.W.2d 825 (1955); *Williams v. Moers*, 240 S.W.2d 336, 342 (Tex.Civ. App.—Galveston 1951, writ ref'd n.r.e.). Here, we overrule none of these cases, because the statements in question are dicta only.

6. "A sensation of pricking, tingling, or creeping on the skin having no objective cause and usually associated with injury or irritation of a sensory nerve or nerve root." Webster's Third Int'l Dictionary 1641 (1976 ed.).

7. With respect to both this reference and the preceding reference to "Dr. Wolcott" in relator's petition, it is unclear whether relator meant to refer only to Lester Wolcott, or only to Randall Wolcott, or to both of them. Because the reference is singular, we assume it is meant to refer to one person only, and, in context, connotes one act.

8. *See Lloyd v. Ray*, 606 S.W.2d 545, 547 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.) (failure to diagnose properly); *Bohn v. United States*, 724 F.Supp. 443, 446–47 (N.D.Tex.1989) (failure to perform surgery promptly) (where court was applying Texas substantive law of medical malpractice, in action under Federal Tort Claims Act); *Bilderback v. Priestley*, 709 S.W.2d 736, 738, 739 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (direction to undergo physical therapy, which allegedly aggravated pre-existing conditions).

claims, the finder of fact will be asked, for each entity concerning which there is evidence of some responsibility for Jones's injuries, to assign a percentage of that responsibility; the percentage the finder of fact assigns to each such entity will necessarily affect, and be affected by, the percentage of responsibility it assigns to each of the other such entities. If the severance order were allowed to stand, and the case were to proceed as two separate suits, then that relationship would hold true only in the abstract, and not in practice. The severance of the claims into two separate suits would not, of itself, preclude each set of defendants from presenting evidence that the defendants on trial in the other suit were responsible for Jones's injuries. In each of those suits, the facts and issues relating to each particular entity's liability for Jones's injuries would be the same. Additionally, the respective triers of fact could each find that Jones had been injured and that the parties over whom their respective courts had no jurisdiction were collectively 100 percent responsible for his injuries, with the nonsensical result that Jones would recover nothing, despite those findings. On the other hand, the respective triers of fact could, instead, each decide that the parties over whom their respective courts *did* have jurisdiction were collectively 100 percent responsible for Jones's injuries, leading to the equally nonsensical result that there would be, at least temporarily, two different judgments for full compensation for the same injuries to Jones.

■ If the severance order were allowed to stand, and the case were to proceed as two separate suits, it is, of course, by no means certain that either of these most extreme results we have suggested here, will actually be realized. However, any similar but less extreme result that might come to pass would remain nonsensical, and therefore un-

just, for the same reason. Accordingly, the severance makes an unjust result, either over- or undercompensating Jones for any injuries he may ultimately be shown to have suffered, not merely possible, but probable. In this instance, the third branch of the *Guaranty Federal* test is not satisfied. *See State Dep't of Highways v. Cotner,* 845 S.W.2d 818, 819 (Tex.1993) (severance was error where the facts and issues related to liability were same in both suits created by the severance, and damage allegations in both were related "to some extent").

Respondent's severance order was improper, because the third *Guaranty Federal* criterion was not met here. The severance order constituted an abuse of discretion.

We next must consider whether an appeal affords relator an adequate remedy for that abuse of discretion. We hold that it does not.

■ Mandamus is justified when parties stand to lose their substantial rights. *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992); *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958). Relator has a substantial right to present the complete set of intertwined facts and issues germane to his claims, to *one* factfinder, in *one* proceeding, rather than in two separate suits that are all but foreordained to generate, collectively, a decision destined to fail in the appellate process.[9] The denial of that right would introduce the "empty chair defense," and thereby skew the progress and entire conduct of the proceedings—with the resultant potential to affect the outcome of the litigation profoundly, and to compromise the presentation of the parties' respective claims or defenses in ways unlikely to be apparent in the appellate record. *Cf. TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 919 (Tex.1991) (concluding that an appeal following the improper

9. The additional expense and effort of preparing for and participating in those trials does not, standing alone, justify the issuance of a writ of mandamus. *See Walker,* 827 S.W.2d at 842 (remedy by appeal not inadequate merely because it may involve more delay or cost than mandamus). Where, however, a trial court's error will cause a waste of judicial resources, an appellate court may properly consider that factor in determining the adequacy of an appeal to

remedy the error in question. *See id.* at 843 (stating, in discovery mandamus context, relator can show that appeal is inadequate by "establish[ing] the effective denial of a reasonable opportunity to develop the merits of case, so that trial would be a waste of judicial resources"). Here, the two trials the severance would effect would indeed constitute such a waste, which mandamus relief can prevent.

striking of a defendant's pleadings is, for similar reasons, not an adequate remedy at law).

Respondent's order transferring venue of the claims against specified defendants presupposed the validity of the severance order that created new cause number 92–030831–A. Because the severance order must fall, the transfer of venue order likewise falls.

We conditionally issue a writ of mandamus directing Judge Ray to vacate her October 8, 1993, order of severance and transfer of venue, and restore the suit to its former posture as a single cause number pending in respondent's court. We are confident that respondent will do so. The writ will issue only if she does not.