# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00124-CV

In re Stonebridge Life Insurance Company

ORIGINAL PROCEEDING FROM COMAL COUNTY

## O P I N I O N

Stonebridge Life Insurance Company seeks a writ of mandamus directing the district court to vacate its order denying its motion to consolidate eleven lawsuits filed against it by real party in interest Lawrence A. Stoepler and order the district court to grant its motion. Under the unique circumstances presented here, we conditionally grant the requested relief.

Based on the record in this proceeding, Mr. Stoepler, apparently in response to direct-mail solicitations from various credit-card companies, made several separate purchases of accidental death and dismemberment insurance coverage from Stonebridge or its predecessor between 1993 and 2000. Stoepler ultimately came to hold eleven separately-issued certificates of coverage, which he characterizes as eleven separate insurance policies. Stonebridge states in its briefing that the eleven certificates represent coverage under three group policies it issued.[1]  In November 2005, Stoepler

---

[1] Although the certificates are in the record, the policies are not. The certificates reflect policy numbers that can be interpreted as referring to three group policies, but could also be interpreted otherwise. The various references to policy numbers are not conclusive on their face and there is no evidence in the record explaining or demonstrating how it is that only three group policies are involved.

was involved in an automobile accident and, on February 14, 2006, his left hand and wrist were surgically amputated. Attributing the amputation to injuries he sustained in the automobile accident, Stoepler submitted eleven claims with Stonebridge corresponding to each of his certificates of coverage. Copies of the eleven certificates of coverage in the record each reflect the promise of benefits for the loss of one hand as a result of a covered injury within 90 or 120 days "after the date of an accident which caused such injury." Exclusions from coverage included "injury that . . . does not directly and independently of all other causes create a loss." Stonebridge denied coverage, attributing at least some of the injury leading to Stoepler's full-hand amputation to a February 2004 chain-saw accident that had cost Stoepler his left thumb and index finger.

In response to Stonebridge's denial of coverage, Stoepler's counsel sent Stonebridge a single DTPA demand letter, covering all eleven certificates, asserting violations of the DTPA and insurance code and stating that Stoepler "has sustained economic damages in the amount of $565,000.00, damages for mental anguish in the amount of $50,000.00, and attorney's fees of $900.00 reasonably incurred by my client in the assertion *of this claim*, for a total amount of $590,900.00." (Emphasis added). Stonebridge responded with a single letter addressing the policy provisions applicable to the various certificates in three groups and denying the policy benefits under each certificate for the same reason – that the amputation was not within 90 or 120 days of the accident causing injury. Subsequently, Stoepler filed eleven separate lawsuits against

---

We note that each of the certificates provides that the insured person can only qualify for coverage under one certificate per policy. In denying coverage, Stonebridge did not refer to duplicative coverage in regard to any of Stoepler's claims under the eleven certificates. This discrepancy is unexplained in the record.

Stonebridge—corresponding to the eleven certificates of coverage. Each of the eleven petitions alleged—in materially identical pleadings—that Stonebridge, by denying benefits, breached the insurance policy, committed unfair claims settlement practices, and breached the duty of good faith and fair dealing, entitling Stoepler to damages and attorney's fees. Each petition treated the certificate of insurance it references as the policy of insurance. With each petition, Stoepler also filed a written stipulation that "the total amount in controversy in this suit does not exceed $75,000." During the hearing on Stonebridge's motion to consolidate, Stoepler's counsel acknowledged that this strategy was intended to prevent Stonebridge from removing the matter to federal court.[2] At the conclusion of the hearing, the district court, although observing that the strategy was "awkward" and "an unusual way to handle things," concluded there was "no impediment in the rules to prevent it," and denied Stonebridge's motion to consolidate.

Texas trial courts have broad discretion regarding the severance and consolidation of cases—but that discretion is not unlimited. *See Pierce v. Reynolds*, 329 S.W.2d 76, 77-78 (Tex. 1959); *Dalisa, Inc. v. Bradford*, 81 S.W.3d 876, 879 (Tex. App.—Austin 2002, no pet.). One well-established limitation on that discretion is the single-action rule, or the rule against splitting claims. *See Pierce*, 329 S.W.2d at 77-78; *Eastland County v. Davisson*, 13 S.W.2d 673, 675-76 (Tex. Comm'n App. 1929, judgm't adopted). Purposes served by this rule include "preventing vexatious and oppressive litigation . . . where a single suit would suffice." *Davisson*, 13 S.W.2d at 676; *see also id.* (adding that multiple suits for breach of the same contract "would not result in any

---

[2] Stonebridge likewise acknowledged that it intended to remove the suits if it succeeded in consolidating them.

3

substantial benefit to the plaintiff, but the same would work a serious inconvenience and hardship upon the defendants"). A trial court abuses its discretion—and is subject to correction by mandamus—by severing a single cause of action into two or more parts. *See In Re El Paso County Hosp. Dist.*, 979 S.W.2d 10, 12 (Tex. App.—El Paso 1998, no pet.); *Ryland Group, Inc. v. White*, 723 S.W.2d 160, 161-63 (Tex. App.—Houston [1st Dist.] 1986, no writ).[3] A trial court also abuses its discretion by severing a cause that is so interwoven with the remaining action as to involve the same facts and issues. *See Dalisa*, 81 S.W.3d at 879-80.

We view the failure to consolidate the eleven lawsuits here, which are pursuing essentially eleven pieces of a single claim for a single injury, as analogous to a trial court's improper severance of a single lawsuit into eleven separate suits. The difference here being that Stoepler unilaterally severed the claims at the time of filing rather than filing one suit and then obtaining a severance. Whether the claim is split at the time of filing or after filing, the effect is the same from the standpoint of the single-action rule. One might argue, applying the concept that a plaintiff is master of his claim, that the plaintiff should be permitted to pursue his claim in eleven pieces if he chooses and rely on principles of collateral estoppel and res judicata to protect defendants. However, at least where a split claim is filed as separate suits before the same court, it is incumbent on the trial court, when requested, to apply the single-action rule and avoid adjudicating a single action in piecemeal fashion – whether this means declining to sever a single action or consolidating an already-split action.

---

[3] A "cause of action" consists of a plaintiff's primary right to relief and the defendant's act or omission that violates that right. *Jones v. Ray*, 886 S.W.2d 817, 821 (Tex. App.—Houston [1st Dist.] 1994, no writ).

As his DTPA demand letter reveals, each of Stoepler's lawsuits are components of a single claim based on a single cause of action, with common facts and issues relating to Stonebridge's denial of benefits under an unknown number of policies, but based on materially identical policy provisions. The policy language implicated by each suit is essentially the same. Stonebridge's denials of benefits are based on the same events and grounds and, thus, are identical. The legal and factual issues of whether Stonebridge breached the relevant insurance policy, acted in bad faith, or violated the DTPA will be identical in each lawsuit. Likewise, any extracontractual damages Stoepler seeks would be common to all of his lawsuits.

Stoepler acknowledged below that "the contracts do deal with the same subject matter [and] . . . have the same parties," and that Stonebridge relied on "the same reason each time" in denying his claims. He adds that he has agreed to consolidate the actions for discovery purposes and that he "has informed the trial court, and hereby stipulates, that a joint trial of Mr. Stoepler's lawsuits where separate judgments would be entered would also be appropriate." Nonetheless, Stoepler urges that his eleven suits constitute separate causes of action because they are founded on "11 separate agreements, 11 separate contracts." To the contrary, Stoepler's claim arises from a single set of events (the loss of his hand), a single claim on materially identical language in multiple certificates of insurance, underwritten by a single carrier. Stoepler concedes that if the carrier is wrong about the availability of policy benefits and if it is found to have acted in bad faith, it has not done so eleven different times here and would not be subject to eleven different liability findings and eleven independent damages awards. At some point in this litigation, these "claims" will have to be handled and adjudicated in some joint fashion. This is because these claims are, in reality, a single

5

action and should be litigated as a single action. Even if Stoepler's breach-of-contract cause of action is divisible among separate policies, that is not true of his claims for extra-contractual damages, which are founded on a single set of acts by Stonebridge in denying policy benefits for a single injury.

We must conclude on this record that Stoepler's pursuit of this his claim as eleven separate suits amounts to claim-splitting and is a violation of the single action rule. The district court's refusal to consolidate Stoepler's eleven lawsuits therefore constitutes an abuse of discretion. We conditionally grant Stonebridge's petition for writ of mandamus and direct the district court to vacate its order denying Stonebridge's motion to consolidate and consolidate the eleven suits in question. The writ will issue only if the district court fails to take appropriate action in accordance with this opinion. We express no opinion regarding implications of this proceeding, if any, for removal or concerning the ultimate merits of the parties' claims or defenses.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Filed:  March 21, 2008

6