**Opinion issued March 19, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00180-CV
_____

**ABSOLUTE OIL + GAS, LLC, Appellant/Cross-Appellee**

**v.**

**CHORD ENERGY CORPORATION F/K/A OASIS PETROLEUM, INC.,
OASIS PETROLEUM NORTH AMERICA, LLC, CRESTWOOD
MIDSTREAM PARTNERS LP, ROUGH RIDER MIDSTREAM
SERVICES, LLC, LLC CRESTWOOD EQUITY PARTNERS LP,
OMP GP LLC, THOMAS NUSZ, TAYLOR REID, MICHAEL LOU,
AND NICKOLAS LORENTZATOS, Appellees**

**CHORD ENERGY CORPORATION F/K/A OASIS PETROLEUM INC.
AND OASIS PETROLEUM NORTH AMERICA, LLC, Cross-Appellants**

**On Appeal from the 269th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2023-08665-A**

## MEMORANDUM OPINION

This appeal arises from a midstream oil and gas contract dispute with related

tort claims brought by Absolute Oil + Gas, LLC ("AOG") against multiple parties,

including Chord Energy Corporation ("Chord") formerly known as Oasis Petroleum Inc. and Oasis Petroleum North America, LLC ("OPNA") (collectively, the Chord Parties); Crestwood Midstream Partners LP formerly known as Oasis Midstream Partners LP, Rough Rider Midstream Services, LLC formerly known as Oasis Midstream Services, LLC, Crestwood Equity Partners LP, and OMP GP LLC (collectively, the Crestwood Parties); and Thomas Nusz, Taylor Reid, Michael Lou, and Nickolas Lorentzatos (collectively, the Executive Parties). AOG alleged that the appellees engaged in a scheme to inflate midstream costs.

After the appellees moved to dismiss certain claims under Texas Rule of Civil Procedure 91a, the trial court dismissed the tort claims against all the appellees. The trial court also dismissed the contract and unjust enrichment claims against the Crestwood Parties and Executive Parties but did not dismiss the contract and unjust enrichment claims against the Chord Parties. The trial court then severed the dismissed claims.

AOG appealed the dismissal of the severed claims. The Chord Parties cross-appealed the trial court's severance order. In two issues, the Chord Parties contend that the trial court abused its discretion by severing the dismissed claims.

We reverse and remand.

## Background

The Chord Parties conduct oil and gas operations in the Williston Basin in North Dakota.

AOG is a minority working interest owner of certain oil and gas wells operated by the Chord Parties ("Subject Wells"). AOG acquired such interests through a 2020 purchase from a third party not involved in this suit. The Subject Wells are governed by a 1999 Joint Operating Agreement and related agreements between the parties' predecessors-in-interest.

In 2017, OPNA contracted with the Crestwood Parties to provide midstream services on the Subject Wells ("2017 Midstream Agreements). AOG alleged that the 2017 Midstream Agreements passed artificially high midstream costs to AOG. AOG further alleged that the Executive Parties, who are affiliated with one or more of the Chord Parties or Crestwood Parties, directed and benefited from the 2017 Midstream Agreements.

AOG asserted various claims against the Chord Parties, Crestwood Parties, and Executive Parties, while using overlapping terms to refer to them in its live petition. AOG referred to Chord, Oasis Midstream Services, LLC n/k/a Rough Rider Midstream Services, and Crestwood Midstream Partners f/k/a Oasis Midstream Partners LP as "Oasis." AOG referred to OPNA, Oasis Midstream Services, LLC

n/k/a Rough Rider Midstream Services, LLC, and Crestwood Midstream Partners f/k/a Oasis Midstream Partners LP as "Subsidiary Defendants."

The Crestwood Parties and Executive Parties moved to dismiss all claims against them under Rule 91a, and the Chord Parties moved to dismiss all tort claims against them under Rule 91a. The Chord Parties' only briefed basis for dismissing the fraud, negligence, and gross negligence claims brought against them was that the economic loss rule barred those claims. The trial court dismissed with prejudice AOG's tort claims against the Chord Parties and all counts against the Crestwood Parties and Executive Parties. But the trial court did not dismiss the breach of contract and unjust enrichment claims against the Chord Parties. And while AOG brought its unjust enrichment claim against all the appellees, the trial court dismissed AOG's unjust enrichment claim against only the Crestwood Parties and Executive Parties.

AOG moved for reconsideration, and alternatively, for severance of the dismissed claims and a stay of the remaining claims. The Chord Parties responded that severance of the dismissed counts was improper. The trial court denied the request for reconsideration but took the motion for severance under advisement. The trial court instructed AOG to prepare a proposed severance order and circulate it to the appellees' counsel before submitting it to the trial court. AOG submitted its proposed severance order to the trial court without circulating it as instructed.

4

The trial court signed AOG's proposed severance order over the Chord Parties' opposition. The trial court entered final judgment as to the severed action and stayed the underlying proceedings for the remaining claims pending any appeal in the severed action.[1]

## Severance Order

In their first cross-issue, the Chord Parties argue that the trial court abused its discretion because its severance order severed counts that were interwoven with the remaining counts. AOG responds that the trial court properly severed the dismissed tort claims from the claims sounding in contract.

### A. Standard of Review

"Any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. We review a trial court's ruling on a severance order for abuse of discretion. *Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room Managers of Am., L.L.C.*, 685 S.W.3d 816, 822 (Tex. 2024). "But the court is not vested with unlimited discretion, and is required to exercise a sound and legal discretion within limits created by the circumstances of the particular case." *Boeing Co. v. Sw. Airlines Pilots Ass'n*, 716 S.W.3d 140, 155 (Tex. 2025). A trial court abuses its discretion if it acts arbitrarily or unreasonably, does not refer to guiding

---

[1] Although the trial court's severance order is ambiguous as to whether the order severed certain dismissed claims, we assume for the purposes of this appeal that all dismissed claims are severed.

5

rules or principles, or plainly fails to analyze or correctly apply the law. *Runcie v. Foley*, 274 S.W.3d 232, 233 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

### B. Analysis

A severance is proper when (1) the controversy involves more than one claim, (2) the severed claim is one that would be the proper subject of an independently asserted lawsuit, and (3) the severed claim is not so interwoven with the remaining action that the actions involve the same facts and issues. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex. 1990). Within this framework, avoiding prejudice, doing justice, and increasing convenience are the controlling reasons to allow a severance. *Id.* "When a trial court severs a lawsuit, two or more independent suits result, and each suit leads to its own final appealable judgment." *In re Henry*, 388 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).

The Chord Parties contend that the severed claims are interwoven with the remaining claims. Claims are interwoven when they involve the same facts and issues to be litigated. *F.F.P. Oper. Partners v. Duenez*, 237 S.W.3d 680, 693–94 (Tex. 2007). "[S]everance of two or more causes of action involving the same facts and issues is improper." *Sealy Emergency Room, L.L.C.*, 685 S.W.3d at 822.

Here, AOG asserted ten claims against the parties, including multiple breach of contract theories and various torts, but each claim incorporates and is based on

6

AOG's allegation that the Chord Parties, the Crestwood Parties, and the Executive Parties collusively agreed to artificially inflate gas processing costs that were passed to AOG. Thus, the severed claims are grounded in the same facts and issues to be litigated as AOG's remaining breach of contract and unjust enrichment claims against the Chord Parties.

For example, AOG's breach of contract claim stems from the 1999 Joint Operating Agreement, but so do AOG's claims for civil conspiracy, negligence, tortious interference, and alter ego. Additionally, AOG incorporated in its breach of contract claim its allegations of fraud, civil conspiracy, breach of fiduciary duty, and knowing participation in breach of fiduciary duty. AOG's breach of contract claim explicitly includes allegations of "gross negligence and willful misconduct" and "actual fraud." AOG also alleged that the Chord Parties' "breaches were committed by [their] alter egos . . . ." Further, AOG's unjust enrichment claim relies on its fraud allegation and incorporates its breach of fiduciary duty allegation.

Although the trial court dismissed and severed AOG's unjust enrichment claim against the Crestwood Parties and the Executive Parties, AOG's unjust enrichment claim against the Chord Parties remains. But the basis of AOG's unjust enrichment claim was that Crestwood Midstream Partners f/k/a Oasis Midstream Partners LP, one of the Crestwood Parties, received monies that should have been paid to AOG, among other working interest owners. Further, the severance of

AOG's unjust enrichment claim against the Crestwood Parties and Executive Parties from the unjust enrichment claim against the Chord Parties risks inconsistent rulings, including on whether an express contract bars restitution. *See Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (explaining that an express contract bars recoveries under quasi-contract theories). For instance, if the dismissal of the severed claims is reversed, and the claims are remanded to the trial court, the factfinder in one case may find that the benefits sought by AOG are governed by the 1999 Agreement, but the factfinder in the other case may find that no existing contract governs. Such potential findings lead to inconsistent rulings and obligations of the parties.

The allegations against the appellees are also largely interwoven according to AOG's live petition. *See Jones v. Ray,* 886 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1994, no writ) (explaining that trial court should look to live pleadings on file when determining severance issue). AOG's live petition overlaps the Chord Parties and the Crestwood Parties in several ways, including: (1) AOG's definitions of "Oasis" and "Subsidiary Defendants," both of which include some of the Chord Parties and Crestwood Parties; (2) AOG's allegations that all the appellees were agents and/or co-conspirators of each other and acted at all material times on behalf of each other; (3) AOG's allegations that the corporate appellees were or are closely interrelated business entities which share corporate office holders and business

8

interests; and (4) AOG's allegations that the appellees acted at all material times "in their individual corporate capacities as well as by and through their unincorporated divisions and departments, corporate parents, subsidiaries and/or other affiliates, alter ego corporations and other entities, its predecessors and/or its successors." The alleged interrelation between the appellees demonstrates shared operative facts across all claims.

The trial court implicitly agreed that certain tort claims were interwoven with the breach of contract count by dismissing certain tort claims under the economic loss rule, which prohibits recasting breach of contract claims as torts involving contractual duties and injury based on the loss of a contractual benefit. AOG also acknowledged the interwoven nature of the severed claims. At the hearing on the severance motion, AOG explained to the trial court that the severed claims "can be rejoined; and we can proceed with one case, one trial, one set of discovery, one scope of discovery." AOG also requested a stay of the original proceeding and remaining claims to prevent "duplication of efforts and potentially unnecessary discovery," explaining that the parties will be forced to spend significant resources in proceeding with discovery when appellate review may result in restoration of the dismissed claims. And AOG told the trial court it had considered a discretionary interlocutory appeal but decided against it, noting that "the court of appeals doesn't take them."

Severance is improper where claims involve the same testimony on damages and require the same proof of conduct. *In re State*, 355 S.W.3d 611, 614 (Tex. 2011). Here, the damages that AOG alleges overlap in both the remaining and the severed claims, creating a risk of duplicate and inconsistent recoveries from fragmented adjudication. *See id.*; *State Dep't of Highs. & Pub. Transp. v. Cotner*, 845 S.W.2d 818, 819 (Tex. 1993). The same expert testimony and the same factual issues are relevant to determine the amount and recoverability of damages. For instance, both the remaining and severed claims require resolution of factual disputes over whether the midstream rates were inflated and what rate is a proper non-inflated rate.

In summary, the severed claims and the remaining claims involve the same subject matter, the same actors, the same time frame, and the same contracts. AOG's live petition relies on the same facts and circumstances to support both its tort and contract claims. If the severance order is upheld, the parties would pay the same attorneys to represent them and the same experts to testify in separate cases when the issues could be tried once in a single action. *See In re State*, 355 S.W.3d at 614. If allowed to stand, the severance would not only inconvenience the parties by causing such duplication, but it could also result in inconsistent judgments, which would prejudice the parties. *See id.; Jones*, 886 S.W.2d at 822.

For these reasons, we hold that the trial court erred in granting AOG's motion for severance.

We sustain the Chord Parties' first issue. Because it is dispositive, we do not reach the Chord Parties' second issue.

## Conclusion

We reverse the trial court's judgment and remand this cause to the trial court with instructions to consolidate the severed and the remaining counts.[2]


                                        Clint Morgan
                                        Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.

---

[2] Because reversing the severance order results in a final disposition, we do not consider the issues raised in AOG's appeal.