In re BROOKSHIRE BROTHERS, LTD.

No. 06–06–00059–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 17, 2006.

Decided July 18, 2006.

Warren T. McCollum, Fenley & Bate, LLP, Lufkin, for relator.

Michael R. McGown, Benckenstein, Norvell & Nathan, LLP, Beaumont, Richard S. Fischer, Nacogdoches, for real party in interest.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Brookshire Brothers, Ltd. (Brookshire) has petitioned this Court for a writ of mandamus. Brookshire sought to compel arbitration of a claim by one of its employees, Clara Mayfield, arising from an injury she sustained while working at Brookshire's grocery store in Carthage. At the time of the injury, Brookshire was a nonsubscriber to the Texas Workers' Compen-

sation law. Mayfield filed a suit alleging Brookshire's negligence proximately caused her injuries. The trial court denied Brookshire's motion to stay litigation and compel arbitration; this request for mandamus relief ensued. We deny the petition for writ of mandamus.

## Mandamus Standard

Certain principles are recognized for appellate courts to consider when deciding whether mandamus should issue. With respect to matters involving the factual findings which are discretionary by the trial court, the appellate courts should defer and should not substitute their own judgment for that of the trial court. The movant must establish that the trial court could have come to only one decision. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). On the other hand, review of a trial court's determination of the legal principles controlling its ruling is much less deferential. A trial court has no discretion in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id.*

Arbitration of disputes is strongly favored. *EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996); *Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex.1995). In determining whether the claims fall within the scope of an arbitration agreement, a court must focus on the factual allegations of the complaint, rather than on the legal causes of action asserted. *Marshall,* 909 S.W.2d at 900. The burden is on the party opposing arbitration to show that their claims fall outside the scope of the arbitration agreement. *Id.* Once an agreement to arbitrate has been shown to exist, the party resisting arbitra-

tion bears the burden of proving that the matter in dispute is not within the scope of the arbitration agreement. *Id.* Courts should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Loy v. Harter*, 128 S.W.3d 397, 402–03 (Tex.App.-Texarkana 2004, pet. denied) (quoting *Marshall*, 909 S.W.2d at 899). That said, since arbitration agreements are founded in contract law, a party has no obligation to submit the controversy to arbitration unless he or she has contracted to do so. *See Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974).

■■■ An employer may enforce an arbitration agreement entered into during an at-will employment relationship if the employer establishes that the employee received notice of its arbitration policy and accepted it. *In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex.2002) (orig.proceeding). Notice is effective if it unequivocally communicates to the employee definite changes in the employment. *Halliburton*, 80 S.W.3d at 568 (citing *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)). If the employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law. *Halliburton*, 80 S.W.3d at 568; *see also In re Dillard Dep't Stores, Inc.*, No. 04–1132, 198 S.W.3d 778, 2006 WL 508629, 2006 Tex. LEXIS 196 (Tex. Mar. 3, 2006) (orig.proceeding).

**The Instant Case**

Mayfield worked for Brookshire for twenty years. On July 21, 2004, she was working in the company's grocery store in Carthage and slipped and suffered an injury. After numerous medical consultations, Mayfield did not physically work for Brookshire after October 28, 2005, but she did retain her status as an employee and continued to receive medical and disability benefits provided by a Brookshire plan. More than a year after her injury, on or around August 29, 2005, Brookshire enacted a policy requiring arbitration of disputes or claims by employees. Brookshire delivered the policy to employees December 15, 2005, but the new policy was not sent to Mayfield until January 2006.

**A. Retroactive Application of the Arbitration Policy**

■■■ Does Brookshire's arbitration policy operate retroactively so that the cause of action accrued by Mayfield more than a year earlier may only be heard in an arbitration process? Brookshire cites two federal cases involving securities transactions in which the courts have interpreted contracts, voluntarily entered by the parties, which contain broad arbitration agreements to require the disputes, some of which arose before the arbitration provision, to be resolved by arbitration. *Coenen v. R.W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.1972); *R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 539 (5th Cir. 1992). After reviewing the authorities on the issue of the retroactive application of arbitration agreements, we find the answer is "much less clear."[1] Here, the arbitration provision stated: "The Policy will cover all disputes arising out of your relationship with [Brookshire], including, but not limited to, the following: ... Tort

---

1. Shawn Bates and David Hricik, *Arbitration Clauses for Ongoing Relationships*, 42 Houston Lawyer 10 (2005). ("The few courts that have faced this issue have held that, except under specific circumstances, even a broad arbitration clause will not reach back in time to embrace disputes arising under an earlier contract that did not contain such a clause ....").

claims ...." We hold that the trial court did not clearly err in denying the motion to compel arbitration.

First, the acts or omissions giving rise to Mayfield's cause of action occurred July 21, 2004, a time when no arbitration policy was in effect. Brookshire did not institute the arbitration policy until August 29, 2005, and did not notify Mayfield of the policy until January 2006. The policy specifically designates its commencement— "Beginning August 29, 2005 (the "Effective Date")." Unlike this case, in both *Dillard* and *Halliburton*, the sequence of events was: (1) the arbitration policy was enacted, (2) the employee continued to work for the employer, and (3) the employee was injured or experienced the conduct on which the claim was based.

Second, the arbitration agreement does not specifically include prior claims. *See Hendrick v. Brown & Root, Inc.,* 50 F.Supp.2d 527, 534 (D.Va.1999).[2] As opposed to many arbitration agreements, this policy was drafted and adopted solely by one of the parties, Brookshire. In many instances, an arbitration agreement is incorporated into a contract that both parties have entered as a result of an arms-length transaction. Here, Mayfield and all other employees are deemed to have accepted the terms of this policy by virtue of their continued employment with Brookshire. Since Brookshire unilaterally established the terms of the arbitration agreement, the fact that the document it prepared and presented to its employees does not specifically include a retroactive provision, even if considered ambiguous, should be construed strictly against the

drafter of the document. *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990) ("It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used.") (citing *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109 (Tex.1978)); *see Hendrick,* 50 F.Supp.2d at 533.[3] In *George Washington University v. Scott,* 711 A.2d 1257 (D.C. 1998), the court held that changes in a health plan including an arbitration provision did not apply to events occurring before the effective date of the change.

> The arbitration clause was not the product of any negotiation ... and it is clear the Scotts did not affirmatively agree to give up their right to seek relief in court for negligent acts committed before the effective date of the arbitration clause. ... [B]efore the arbitration clause could have any retroactive effect on rights previously accrued, the language of the new provision in the contract should so state. ... No ordinary reader of the 1994 and 1995 agreements would reasonably conclude that the Scotts knowingly and affirmatively gave up their right to file a civil action for negligent acts that occurred in 1994.

*Id.* at 1261. That court further held that the presumption in favor of arbitration applies only to the interpretation of the arbitration clause, not to the preliminary determination of the existence and validity of an agreement to arbitrate. *Id.* The court found a valid arbitration provision,

---

2. An arbitration provision will cover disputes arising under prior contracts where the clause contains retroactive, time-specific language mandating its application to previously executed contracts. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton,* 719 So.2d 201, 203 (Ala.1998).

3. There is no evidence that Mayfield even knew of Brookshire's decision to institute an arbitration policy until she received the completed document in January 2006.

but only with respect to events after the effective date of the arbitration policy, not for prior events. *Id.*

Third, the arbitration provision speaks prospectively only: "The policy *will cover* all disputes *arising out of* your relationship with [Brookshire]." (Emphasis added.) Texas contract law requires the court to determine the intent of the parties by interpreting the language of the contract in its plain grammatical meaning, unless doing so would defeat the parties' intentions. *See Ikon Office Solutions v. Eifert,* 2 S.W.3d 688, 694 (Tex.App.-Houston [14th Dist.] 1999, no pet.). Thus, we look to the dictionary definitions and common usage of these words to understand the meaning.

The root form of the word "arising"— the intransitive verb "arise"—means "[t]o come into being." WEBSTER'S NEW COLLEGE DICTIONARY 61 (2d ed.2001). The verb "will" when used as an auxiliary verb, indicates a future tense action to be performed by the main verb. *Id.* at 1263; *see also* GARNER'S MODERN AMERICAN USAGE 777 (2d ed.2003). Thus, the verb phrase "will cover" indicates future action, as distinguished from the phrase's present tense counterpart "covers." This is true even if the subordinate verb clause employs a present tense verb—though that is not the case here as the phrase "arising out" similarly suggests events that have not yet "come into being." *See generally* GARNER'S MODERN AMERICAN USAGE 778. The structure of the sentence does not suggest that past events are subject to this arbitration provision. An employee can either accept the arbitration agreement as it is written or reject it by ceasing employment with the company. (And in this instance, giving up rights for medical and disability benefits.) The employee is deemed to have accepted the arbitration provision, but she only accepts what the document states is arbitrable. Since the structure of the provision indicates that this language was meant to apply only to future events, it is proper to conclude with assurance that Brookshire and Mayfield did not intend to arbitrate disputes occurring before the effective date of the arbitration policy.

To interpret the arbitration clause to apply retroactively would cause Mayfield to forego her vested right to litigate an accrued claim. *See Coffman v. Provost ★ Umphrey, L.L.P.,* 161 F.Supp.2d 720, 727 (E.D.Tex.2001) (citing *Security Watch, Inc. v. Sentinel Sys.,* 176 F.3d 369, 372–73 (6th Cir.1999) ("arbitration clause did not reach disputes arising under earlier agreements because it is 'nonsensical to suggest that (the plaintiff) would abandon its established right to litigate disputes arising under the (prior) contracts' ")); *Choice Sec. Sys., Inc. v. AT & T Corp.,* No. 97–1774, 1998 WL 153254, 1998 U.S.App. LEXIS 6594 (1st Cir.1998) ("arbitration clause in 1994 contracts did not apply to pre–1994 contracts when the language of the arbitration clause did not indicate 'that the parties ever contemplated so radical a retroactive renegotiation of their earlier agreements' "); *Hendrick,* 50 F.Supp.2d at 535 ("arbitration clause was not retroactive when the text of the clause expressed no language providing that it 'reached back in time to require an employee to arbitrate a claim which had accrued before the contract was signed or the (arbitration clause) took effect' "); *Connett v. Justus Enters. of Kansas, Inc.,* No. 87–1739–T, 1989 WL 47071, at * 1, 1989 U.S. Dist. LEXIS 3529, at *2 (D.C.Kan. Mar. 21, 1989) ("arbitration clause did not apply retroactively when it did not specify that it applied to past conduct").

Fourth, the designated representative of Brookshire, Robert Gilmer, originally testified it was not Brookshire's policy that the arbitration provision applied to claims which occurred before August 29, 2005

(the effective date of the arbitration provision). Gilmer's testimony is further assurance that Brookshire, at the time the arbitration provision was adopted, did not consider causes of action arising from preceding events to be a subject of arbitration. Later, Gilmer submitted an affidavit in which he claimed the arbitration policy was only "intended to set a date on which disputes which had already been filed in a court of law or with an administrative agency would not be included within the arbitration agreement."

For all of the above reasons, we find this arbitration policy does not manifest an intention to include this pre-existing dispute. An application of the rule, that parties are required to arbitrate only those claims which they have agreed to arbitrate, leads us to the conclusion that the trial court did not abuse its discretion in denying the motion for arbitration. *See Hendrick,* 50 F.Supp.2d at 538.

### B. Procedural Unconscionability

■ Mayfield further alleges that the arbitration policy, as applied to her circumstances, is procedurally and substantively unconscionable. Brookshire asserts that we cannot consider this argument since it was not raised at the trial court level, citing *In re R & R Personnel Specialists of Tyler, Inc.,* 146 S.W.3d 699, 703 (Tex.App.-Tyler 2004, no pet.), and other cases holding that an order requiring arbitration must be upheld if it is proper on any basis *considered* by the trial court. While that is a correct statement of the law, we believe the rule governing this case is well established: if the trial court does not specify the grounds for the ruling, it is presumed that it made all necessary findings to support its judgment, and we must affirm the ruling if it can be upheld on any legal theory that finds support in the evidence. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990); *Leisure*

*Life Senior Apt. Hous., Ltd. v. JC Framing Co.,* No. 14-00-00426-CV, 2001 WL 950774, 2001 Tex.App. LEXIS 5721 (Tex. App.-Houston [14th Dist.] 2001, no pet.) (not designated for publication).

Mayfield's allegations as to procedural unconscionability are: (1) it is a unilateral policy dictated by Brookshire, (2) Mayfield never specifically agreed to or accepted the policy, (3) as applied to her, a rejection of the policy requires her to forfeit not only her job, but also her previously accrued right to medical and disability benefits, and (4) she was in the process of invoking the judicial system and except for the actions of Brookshire would have previously filed her lawsuit in court.

■ The Texas Supreme Court has clearly stated that an employer of an at-will employee, having the right to terminate employment at the employer's discretion, may condition continued employment on the acceptance of an arbitration agreement. *Halliburton,* 80 S.W.3d at 572. Mayfield, however, will not only give up her job, but also her right to continued medical and disability benefits that she has been receiving, should she resign. Brookshire acknowledges that Mayfield must be an employee of Brookshire to receive medical and disability benefits. We believe this is substantially different than the *Halliburton* case. An employee might choose in some instances to forfeit a job, rather than continue to work under the terms of an arbitration policy, particularly if the injury sustained is so severe the employee could no longer perform the job duties, but it is substantially more oppressive and unreasonable to require the employee to also forfeit accrued rights for medical and disability benefits for an injury occurring months before the adoption of the policy. The cover letter for the arbitration policy sent to employees stated, "no rights are taken away from anyone and the same

remedies, like money damages, are still available through this process." The statement is misleading when it informs employees that no rights are taken away. This litigation is proof that, in the event arbitration is required, the right to a judicial resolution or a jury trial no longer exists under the arbitration policy. In *Wilcox v. Valero Refining Co.*, 256 F.Supp.2d 687 (S.D.Tex.2003), the court held that an arbitration policy would be procedurally unconscionable, even when stated in the broadest terms ("any workplace dispute, regardless of when it arises"), if it encompassed events that occurred in the past and was enacted after the employee had invoked the "machinery of the justice system." *Id.* at 691. The court found this would amount to a change in the rules in the middle of the game. There, the employee had not filed suit, but had filed an administrative claim that was a prerequisite to a lawsuit. Since the employee had instituted the judicial process by filing an administrative matter, the court found it would be procedurally unconscionable to allow the new arbitration policy to govern the facts of an incident occurring before the establishment of the arbitration policy. Here, Mayfield had not filed suit when she received a copy of Brookshire's policy. However, the facts also show that she had retained a lawyer, had been conferring with officials at Brookshire, and the parties had scheduled mediation for February 1, 2006. According to Brookshire, about the same time Mayfield was notified of the arbitration policy, January 2006, Brookshire cancelled the mediation setting due to Mayfield's "outlandished demand for compensation." We believe this is similar to *Wilcox* in that Mayfield had taken action to institute the legal process and had notified Brookshire of her intention to pursue legal action on the dispute before receiving the arbitration policy. Since it is the policy of our state to encourage alternative dispute resolutions, an employee should not be penalized for attempting to resolve a matter by a sanctioned alternative to litigation. After examining the entire atmosphere in which the policy was made; the alternatives, if any, available to the parties at the time the policy was instituted; the "nonbargaining ability" of one party; whether the policy was illegal or against public policy; and whether it is oppressive or unreasonable, we find the arbitration policy, as applied to Mayfield's situation, was procedurally unconscionable. *See In re Turner Bros. Trucking Co.*, 8 S.W.3d 370, 376–77 (Tex. App.-Texarkana 1999, orig. proceeding); *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821–22 (Tex.App.-San Antonio 1996, no writ).

For the reasons stated above, we hold that the arbitration provision did not require mandatory arbitration for Mayfield's claims. Therefore, the trial court did not abuse its discretion when it denied Brookshire's motion to compel arbitration.

We deny the petition for writ of mandamus.