

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00049-CV
_____

IN RE: EDWARD LIU, M.D.

Original Mandamus Proceeding

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley
Concurring Opinion by Justice Carter

OPINION

Dr. Edward Liu seeks an order from this Court directing the 71st Judicial District Court of Harrison County, Texas, to grant Liu's motion to sever the medical malpractice claims brought against him by Susan Woods in connection with her lawsuit against various parties. Woods's claimed injuries stem from an automobile collision that occurred in Harrison County. She sued several parties, including the allegedly intoxicated driver and many of the medical personnel who subsequently treated her at a hospital located in Gregg County, Texas; she claimed that her arm was broken in the collision and that the broken bone failed to heal properly because of improper treatment of the condition by Liu and others. Liu takes the position that the alleged tort which occasioned the automobile collision was separate, distinct, and apart from the claimed medical malpractice, but Woods maintains that there is a continuum which began with her injury and lasted through the allegedly-faulty medical treatment of that injury.

For the reasons set forth below, and without hearing oral argument a second time,[1] we conclude that the mandamus record fails to establish that the trial court's decision to deny Liu's requested relief fell outside the wide range of sound judicial reasoning, that the trial court has acted arbitrarily, or that the trial court acted without reference to guiding rules and principles.

We, therefore, deny Liu's petition for extraordinary relief.

## A.      Standard for Mandamus Relief

Mandamus is the appropriate avenue by which a party may seek review of a trial court's order regarding severance. *See In re Hoover, Bax & Slovacek, L.L.P.*, 6 S.W.3d 646, 650 & n.12 (Tex. App.—El Paso 1999, orig. proceeding) (mandamus appropriate vehicle through which to challenge trial court's order severing claims brought within lawsuit). We may grant the extraordinary relief of mandamus only when the record brought forth demonstrates that the trial court has clearly abused

---

[1]These same issues have been presented to us before by the same parties. In cause number 06-08-00140-CV, Woods sought a petition for writ of mandamus from this Court that directed the trial court to withdraw its order granting Liu's severance motion. Oral argument was presented by both parties in connection with the previous mandamus proceedings. In the previous petition brought to this Court, the then-sitting trial court, the Honorable Bonnie Leggat Hagan, had granted Liu's severance motion. She subsequently retired from her position as the presiding judge of the 71st Judicial District Court and the Honorable William Todd Hughey was elected and assumed office during the pendency of that previous mandamus proceeding. After having first heard oral argument in connection with that previous case, we abated Woods's mandamus petition pursuant to Rule 7.2 of the Texas Rules of Appellate Procedure to allow the newly-seated judge to reconsider Liu's severance motion. *See* TEX. R. APP. P. 7.2. After such consideration, the new trial court denied Liu's severance order, rendering moot that prior petition for mandamus relief. The parties' positions in this current mandamus proceeding are merely repetitive of their positions previously: Liu asserts severance is proper; Woods argues to the contrary. Those positions were thoroughly explored during oral argument in connection with cause number 06-08-00140-CV, and we take judicial notice of those previous proceedings. *See* TEX. R. EVID. 201.

3

its discretion and that the relator lacks an adequate appellate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257 (Tex. 2008); *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998); *see also Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A trial court does not abuse its discretion unless the judge acts without reference to guiding rules and principles or acts in a manner that is arbitrary and unreasonable. *Colonial Pipeline Co.*, 968 S.W.2d at 941; *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Sw. Health Plan, Inc. v. Sparkman*, 921 S.W.2d 355, 357 (Tex. App.—Fort Worth 1996, no writ). "The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Adams v. Baxter Healthcare Corp.*, 998 S.W.2d 349, 356 (Tex. App.—Austin 1999, no pet.) (conducting review of severance order).

"Under an abuse of discretion standard, we view the evidence in the light most favorable to, and indulge every presumption in favor of, the trial court's action." *Id.*; *see also Hoover, Bax & Slovacek*, 6 S.W.3d at 650. We show much less deference with respect to our review of the trial court's determination of the controlling legal principles. *In re Brookshire Bros., Ltd.*, 198 S.W.3d 381, 383 (Tex. App.—Texarkana 2006, orig. proceeding [mand. denied]). "A trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ." *Hoover, Bax & Slovacek*, 6 S.W.3d at 650.

4

When the trial court makes no formal findings of fact or conclusions of law (as is the case here), we must presume the trial court made all findings necessary to support its judgment. *See Worford*, 801 S.W.2d at 109 (addressing whether trial court abused discretion in determining child support where court entered no written findings or conclusions). In such situations, the trial court's ruling must not be disturbed if "it can be upheld on any legal theory that finds support in the evidence." *Id.*; *see also Brookshire Bros.*, 198 S.W.3d at 387 (where trial court enters no written findings, mandamus court must uphold trial court on any legal theory finding support in evidence).[2]

## B. The Order Denying Severance

The trial court's order denying Liu's severance motion succinctly stated:

> On the 30th day of March, 2009, came on to be heard Defendant Edward Liu, M.D.'s Motion To Transfer Venue, Alternatively, Motion to Dismiss and

---

[2]We note that at least one appellate jurist, Chief Justice Tom Gray of the Tenth Court of Appeals, has expressed reservations about the propriety of a mandamus court's decision to deny relief being based on a legal principle not otherwise expressly briefed by the parties at the appellate level. Chief Justice Gray has argued that such "savings" arguments have been forfeited by the parties when those issues were not raised and briefed by the parties themselves, but instead only brought forth by the reviewing court sua sponte. *See, e.g.*, *In re Olshan Found. Repair Co. of Dallas, L.L.C.*, 192 S.W.3d 922, 926–27 (Tex. App.—Waco 2006, orig. proceeding) (Gray, C.J., dissenting). Respectfully, we disagree with Chief Justice Gray's approach, if for no other reason than the fact that mandamus review requires us to focus on the *trial court*'s decision-making process, rather than the parties' abilities to preserve or forfeit issues. When the trial court does not delineate its reasoning, the mandamus standards do not thereafter limit our review process based on how narrowly the parties have briefed the case. Instead, the reviewing court is called upon to examine the mandamus record in the "light most favorable" to the trial court's resolution of the issues and indulge in all reasonable inferences that would support denying relief. *See generally In re Travelers Lloyds of Tex. Ins. Co.*, 273 S.W.3d 368 (Tex. App.—San Antonio 2008, orig. proceeding) (en banc); *cf. Worford*, 801 S.W.2d at 109 (lower court's judgment must be affirmed if it can be upheld on any legal theory that finds support in evidence).

5

Alternatively, Motion To Sever. After reviewing the pleadings and responses, including letter briefs subsequently submitted to the court, the Court is of the opinion that the motion to Transfer Venue, Alternatively, Motion to Dismiss and Alternatively, Motion to Sever is Denied in all parts.

**C.    Standard for Severance**

Severance divides a lawsuit into two or more separate and independent causes of action. *Hall v. City of Austin*, 450 S.W.2d 836, 837–38 (Tex. 1970). When a trial court grants a severance, the separated causes of action typically proceed to individual judgments—judgments that are themselves separately final and appealable. *Id.* at 838. Causes of action that have been severed from each other into independent lawsuits will be heard by different juries. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 630 (Tex. 1996).

"Severance of claims under the Texas Rules of Civil Procedure rests within the sound discretion of the trial court." *In re Foremost Ins. Co.*, 966 S.W.2d 770, 771 (Tex. App.—Corpus Christi 1998, orig. proceeding) (quoting *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658; *Hamilton v. Hamilton*, 154 Tex. 511, 280 S.W.2d 588, 591 (1955); *and referencing* TEX. R. CIV. P. 41). "A trial court properly exercises its discretion in severing claims when: (1) the controversy involves more than one cause of action; (2) the severed claim is one that could be asserted independently in a separate lawsuit; and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues." *Id.* (quoting *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658); *see also Akin*, 927 S.W.2d at 628. "The controlling reasons for a severance are to do justice, avoid prejudice,

6

and further convenience." *Id.* (quoting *Akin*, 927 S.W.2d at 629; *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658).

The issue of whether a trial court should or should not grant a severance motion is ultimately a question of law. *See generally Guar. Fed. Sav. Bank*, 793 S.W.2d at 658–59. When considering whether to grant a severance motion, the trial court must generally accept the plaintiff's pleadings as true and then determine whether severance is appropriate. *Jones v. Ray*, 886 S.W.2d 817, 820 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding). "The controlling reasons for a severance are to do justice, avoid prejudice and further convenience." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658 (citing *St. Paul Ins. Co. v. McPeak*, 641 S.W.2d 284 (Tex. App.—Houston [1st Dist] 1982, writ ref'd n.r.e.)). If the trial court's decision to grant or deny a party's severance motion fell within the wide zone of reasonable agreement, the appellate court reviewing that decision within the context of a mandamus proceeding should not conclude the lower court abused its discretion. Given that the trial court must generally accept the plaintiff's pleadings as true, the only remaining dispute concerns the legal consequences stemming from those accepted-as-pleaded facts.

### D.     Woods's Pleadings

According to her second amended petition, Woods was involved in a two-vehicle automobile accident on Interstate 20 (I-20) in Harrison County, Texas. The accident occurred on January 28, 2006, at approximately 12:40 p.m. According to those pleadings, Carl Shallies Parker (when driving while intoxicated) was proceeding westerly on I-20, crossed over the grass median separating the

7

lanes, and struck the vehicle in which Woods was a passenger in a head-on collision. Woods was injured in the collision and required medical attention. Woods was transported to Good Shepherd Medical Center in nearby Longview, Gregg County, Texas, where her condition was stabilized. After Woods's condition was stabilized, Liu performed orthopedic surgery on her "to repair the most serious of [her] injuries: the comminuted fracture of [her] left humerus." Liu allegedly failed to fully connect the surgically repaired bone to a rod placed in Woods's arm using one or more screws. According to Woods's second amended petition, "This failure to secure the distal end of the rod/pin constituted negligence on the part of Defendant LIU."

Woods sued several people: Parker (the alleged intoxicated driver who caused the accident), Liu, Dr. Jerry Keaton, Dr. Alan Glowczwski, and two insurance companies. Woods asserted various theories of liability against the several defendants, including negligence, negligence per se, and gross negligence against Parker; negligence and breach of duty of care (within the context of providing medical services and treatment) against Liu, Keaton, and Glowczwski; and breach of contract against the insurance companies. Woods also alleged, "[The] acts and/or omissions of Defendant LIU, in combination with the acts and/or omissions of Defendants PARKER, GLOWCZWSKI, and KEATON, caused Plaintiff's fractured humerus to heal improperly resulting in a non-union of that humerus. This injury is indivisible as to all of these Defendants."

8

**E.     The Severance Motion**

Liu subsequently filed a motion to sever the medical malpractice claims against him from those claims against the other defendants.  The first trial court granted Liu's severance motion on November 25, 2009.

**F.     Other Appellate Decisions Concerning Severance**

In the case of *Foremost Insurance Co.*, Toby Driscoll sued his mother and her insurance liability carrier for injuries he sustained while visiting his mother in her home.  He further sued her homeowner's liability carrier for breach of contract, violation of good faith and fair dealing, deceptive trade practices, and violating a provision of the Texas Insurance Code.  The insurance company filed a motion to sever the claims against it from the remainder of Driscoll's lawsuit; the trial court denied the motion.  966 S.W.2d at 771.  In a mandamus proceeding, the Thirteenth Court of Appeals held the trial court abused its discretion by denying the severance motion:

> While it is true the events giving rise to all Driscoll's claims originated with the collapse of his mother's chair, the actions making the basis for his lawsuit against Foremost are clearly distinguishable.  The causes of action raised by Driscoll against Foremost relate exclusively to Foremost's behavior following his injury, while his cause of action against his mother relates to the injury causing event itself.  We find Foremost and Mrs. Driscoll satisfy the requirements necessary to trigger severance.

*Id.* at 772.  The Twelfth Court of Appeals recently reached the same result in two factually and procedurally similar original proceedings.  *See In re Allstate County Mut. Ins. Co.*, 209 S.W.3d 742, 744 (Tex. App.—Tyler 2006, orig. proceeding) (trial court abused discretion by not severing plaintiff's contractual claims from noncontractual claims); *In re Miller*, 202 S.W.3d 922 (Tex.

9

App.—Tyler 2006, orig. proceeding) (trial court did not abuse discretion by severing breach of contract claim from separate and distinct noncontractual causes of action). Here, Liu did not raise any issue regarding the existence of contract claims in Moore's petition being tried simultaneously with the tort claims.

In the underlying lawsuit for *Liberty National Fire Insurance Co. v. Akin*, a homeowner sued her insurance carrier for breach of contract, violation of the Texas Insurance Code, and deceptive trade practices after the carrier denied a claim. The insurance carrier sought to sever those claims on the basis that certain evidence admissible for the bad-faith claim would be inadmissible on the contract claim. The trial court denied the motion and the carrier sought mandamus relief with the Texas Supreme Court, arguing that joinder of the claims would cause undue prejudice in the resulting combined trial. The *Akin* court began its analysis by noting that insurance coverage claims and bad faith claims are, by their nature, independent causes of action. The court then acknowledged that severance of claims under our Rules of Civil Procedure rests within the trial court's sound discretion. The *Akin* court ultimately concluded that the trial court had not abused its discretion because the homeowner's claims would be largely interwoven and that any prejudicial effect caused by admission of evidence for one claim that should not be considered in evaluating the merit of a different claim could be reasonably ameliorated with an appropriate jury instruction. The applicable law, therefore, did not mandate severance given the factual posture of the mandamus record. 927 S.W.2d at 628–31.

10

More recently, the Second Court of Appeals reviewed a case involving thirteen plaintiffs whose food poisoning lawsuits against a manufacturer, a distributor, and a salvage grocer of spoiled chili had been consolidated for trial. The lawsuits involved tort claims as well as fraud claims, based on the belief that some of the plaintiffs had been fraudulently induced into settling their tort claims. The chili's distributor, Ben E. Keith, sought to sever the food poisoning victims' claims from those brought by a cross-defendant alleging a tortious interference with business relations; the trial court denied the distributor's severance motion. The distributor then sought mandamus from the Fort Worth appellate court. The court of appeals determined the tortious interference claims were factually, temporally, and legally distinct from those claims surrounding the distribution and consumption of the spoiled chili. Accordingly, because these business tort claims were "not so interwoven with the personal injury action that they involve the same facts and issues, they [were] properly severable." *In re Ben E. Keith Co.*, 198 S.W.3d 844, 848 & 853 (Tex. App.—Fort Worth 2006, orig. proceeding) (quoting *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658). The appellate court ultimately concluded that the trial court abused its discretion by failing to sever the two types of claims, reasoning that allowing these multitude of claims to proceed in a unitary proceeding might only serve to confuse and prejudice the jury against the distributor in assigning liability for the plaintiffs' food poisoning. *Id.* at 855.

Next, the Fourth Court of Appeals recently reviewed a case in which a mother had sued her obstetrician for injuries sustained by the mother's son during childbirth. The mother later amended

11

her petition to include claims against another doctor (who performed a tubal ligation following the delivery), a medical group that had previously (but not as of the date of the child's delivery) employed the obstetrician, and the hospital at which she gave birth. Additional defendants were also added regarding indemnity coverage. The trial court severed the indemnity coverage claims from the other causes of action. On direct appeal of the trial court's final judgment, the mother complained that the trial court erred by severing her indemnity claims against the hospital from the medical malpractice case. The appellate court disagreed, noting that the mother's indemnity claims were temporally, factually, and legally separable from the mother's negligence claims. The trial court's severance order was, therefore, a proper exercise of its discretion. *Laredo Med. Group v. Jaimes*, 227 S.W.3d 170 (Tex. App.—San Antonio 2007, pet. denied).

Finally, last fall, the Fourth Court of Appeals again reviewed the propriety of a trial court's order regarding severance. In *Travelers Lloyds of Texas Insurance Co.*, the relators sought a writ "directing the trial court to grant their motion for severance and abatement." 273 S.W.3d at 370. The insurance company was sued by two homeowners for hail and water damages; the causes of action involved contractual and noncontractual claims. *Id.* Travelers made a settlement offer, which was rejected by the homeowners; Travelers subsequently sought to have the contractual and noncontractual claims severed on the basis that the insurer would be entitled, at the time of trial, to introduce evidence of its settlement attempts to rebut the homeowners' claims of bad faith (evidence that would not have been admissible with respect to the contract claim). *Id.* at 370–71. The trial

court denied the severance motion. The Fourth Court of Appeals affirmed the trial court's ruling, concluding the trial court's remedy of conducting a bifurcated proceeding was a viable, reasonable solution to the problems raised in the underlying case. *Id.* at 373–75. The appellate court thus held that the trial court had not abused its discretion.

## G.     The Mandamus Record Does Not Reveal an Abuse of Discretion

We now turn to whether the trial court abused its discretion by denying Liu's severance motion. Both the real party in interest and the respondent agreed at oral argument that this lawsuit involves more than one cause of action. The mandamus record supports this agreement: Woods is suing multiple parties under varying causes of action. Some of her claims sound in tort, others in contract. The defendants include medical professionals, insurance companies, and the allegedly intoxicated driver who piloted the car which crashed into the one carrying her.

The parties also agreed during oral argument in the prior mandamus proceeding that *Guaranty*'s second prong has been met and the mandamus record supports the parties' agreement on this aspect: There seems to be little doubt that Woods could have sued Liu for medical malpractice without having sued the other driver, the other medical providers, or the insurance companies.

The only true disagreement among the parties concerns the third prong of *Guaranty*'s test: whether "the severed actions are not so interwoven with the other claims that they involve the same facts and issues." *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658.

As discussed above, Woods claims she was injured as a result of an intoxicated driver crossing the median of I-20 and striking the vehicle in which Woods was a passenger. The accident occurred in Harrison County and Woods suffered substantial injuries. She was transported from the scene of the accident to Good Shepherd Medical Center. There, Woods was treated by several different medical professionals, including Liu. Woods contends that Liu failed to properly complete her surgery because he neglected to connect one or more anchoring screws to the distal end of the inserted rod; as a result, Woods's bones did not heal properly. Woods also sued Travelers Insurance Company, raising breach of contract and underinsured motorist coverage claims. In addition, Woods brought suit against State Farm Insurance for breach of contract and underinsured motorist coverage claims. The claims against the two insurance companies concern those companies' alleged denial of coverage following Woods's submission of reimbursement claims to both.

With respect to having a singular proceeding involving Woods's medical malpractice claims against Liu and Woods's other claims against Parker, the trial court could have reasonably concluded that the close temporal proximity of the moments when the defendants allegedly injured Woods, the high degree to which these claims involve the same facts and issues, and the interwoven proof of damages could have (when factored together) prompted the trial court to conclude that a unitary proceeding against the multiple alleged tortfeasors was necessary, based on Woods's allegation in her amended petition that her injuries were the result of the combined negligence of both Parker and Liu. *Cf. Landers v. E. Tex. Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952)

14

("Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers . . . the injured party may proceed to judgment . . . against all in one suit."). We do not believe such a conclusion to be arbitrary or unreasonable, given the mandamus record before us.[3]

Finally, the trial court may have been concerned that if the cases were severed, there was a heightened possibility that two juries in two separate trials in separate cases might arrive at different and conflicting results and a single trial would reduce the chance of that possible scenario.

---

[3]Liu also asserts it will be difficult for the trial court to craft a proper jury charge in this case. We agree. But we disagree with Liu's contention that such a task is impossible. We have full faith that the trial court, working with all the parties, who are represented by conscientious attorneys, could create a proper jury charge in this case that is not merely limited only to that which might be found in the Pattern Jury Charge handbook. The potentiality of crafting a proper jury charge is, however, irrelevant to the issue actually presented—which is whether certain causes of action against Liu are so interwoven with the claims against the other defendants that they involve the same facts and issues as to counsel submission to the same jury. On this record, we cannot say the trial court abused its discretion by answering that question in the affirmative.

15

Therefore, for the reasons discussed, we deny Woods's petition for writ of mandamus.


Bailey C. Moseley
Justice


CONCURRING OPINION

I concur with the result reached by the majority opinion, but write additionally to emphasize what I believe to be an important case not discussed in that opinion.

In *Jones v. Ray*, 886 S.W.2d 817 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding), the plaintiff alleged that a series of events by different medical personnel in different counties and at different times combined to produce the quadraplegia of a minor. At least one of the acts of negligence involved dropping the patient on the floor. The trial court severed the actions of some of the tortfeasors. In granting the mandamus, the court of appeals found that an abuse of discretion occurred. The following quote is lengthy, but explains the important principles better than I can:

> The severed causes must also not be so intertwined as to involve the same identical facts and issues. In his fourth amended petition, relator alleged a continuous course of treatment constituting one continuous transaction, jointly producing an indivisible injury. Accordingly, the damages, if any, suffered by Jones from the acts relator alleges in the severed claims, necessarily relate to and are intertwined with the damages he suffered from the alleged acts of the Harris County defendants. At a single trial of all claims, the finder of fact will be asked, for each entity concerning which there is evidence of some responsibility for Jones's injuries, to assign a percentage of that responsibility; the percentage the finder of fact assigns to each such entity will necessarily affect, and be affected by, the percentage of responsibility

16

it assigns to each of the other such entities. If the severance order were allowed to stand, and the case were to proceed as two separate suits, then that relationship would hold true only in the abstract, and not in practice. The severance of the claims into two separate suits would not, of itself, preclude each set of defendants from presenting evidence that the defendants on trial in the other suit were responsible for Jones's injuries. In each of those suits, the facts and issues relating to each particular entity's liability for Jones's injuries would be the same. Additionally, the respective triers of fact could each find that Jones had been injured and that the parties over whom their respective courts had no jurisdiction were collectively 100 percent responsible for his injuries, with the nonsensical result that Jones would recover nothing, despite those findings. On the other hand, the respective triers of fact could, instead, each decide that the parties over whom their respective courts *did* have jurisdiction were collectively 100 percent responsible for Jones's injuries, leading to the equally nonsensical result that there would be, at least temporarily, two different judgments for full compensation for the same injuries to Jones.

*Id.* at 821–22.

The possibility of inconsistent verdicts is likewise present in this case. In a severed case in Harrison County, it is conceivable that the jury would place the entire percentage of responsibility on Dr. Edward Liu, for the nonconnected humerus bone, as Dr. Liu's conduct would be an issue as a responsible third party, even though the plaintiff could not recover for Dr. Liu's conduct. TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a)(4) (Vernon 2008). This finding could not be used in a later proceeding to impose liability on Dr. Liu. TEX. CIV. PRAC. & REM. CODE ANN. § 33.04(i)(2) (Vernon 2008). Then, if the case against Dr. Liu was tried in Gregg County, it is possible that a jury could find that the driver's negligence was the entire cause of the injury to the humerus bone, thereby resulting in two completely inconsistent verdicts. The plaintiff would have findings of 100% responsibility of each of the defendants, but have no recovery. Theoretically, the converse could

17

occur, resulting at least temporarily in a double recovery.  To avoid the possibility of such inconsistent results, the trial court properly exercised its discretion by denying  the severance.


                                    Jack Carter
                                    Justice


Date Submitted:      June 9, 2009
Date Decided:        June 10, 2009