COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 


 
 
  
  
  
 IN RE ELAMEX, S.A. DE C.V.,
 ELAMEX USA, CORP., AND
 MOUNT FRANKLIN FOODS, L.L.C.,
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
 § 
  
 
 
  
  
 08-11-00089-CV
  
 AN ORIGINAL
 PROCEEDING IN
  
  MANDAMUS 
  
 
 


 

O
P I N I O N

            In this original proceeding, Relators seek to
compel Respondent to vacate an order denying their motion to sever and an order
denying their motion to dismiss on forum
non conveniens grounds.  For the
reasons stated below, we deny Relators’ petition for writ of mandamus.

Factual and Procedural Background

            This case centers on a dispute among entities
and individuals involved in the candy business.

The Parties

The two Plaintiffs in the underlying suit are
Real-Parties-in-Interest in this mandamus action.  One of the Plaintiffs is Dulces Arbor, S. de
R.L. de C.V. (“Dulces Arbor”), a Mexican corporation.  The other is Blueberry Sales, LLP (“Blueberry
Sales”), a Delaware limited liability partnership that has its principal place
of business in El Paso.[1]  Blueberry Sales is the American counterpart
to Dulces Arbor.[2]

There are seven Defendants in the underlying
lawsuit, but only three of them are Relators in this mandamus action.  Relators are Elamex, S.A. de C.V. (“Elamex
Mexico”), Elamex USA, Corp. (“Elamex USA”), and Mount Franklin Foods, LLC (“MFF”).  Elamex Mexico is a Mexican corporation doing
business in Texas.  Elamex USA is a
Delaware corporation doing business in Texas. 
MFF is a Texas limited liability company.  These three entities are interrelated – Elamex
Mexico owns Elamex USA, which in turn owns MFF – and all operate from or have
offices in El Paso, Texas.

The other Defendants in the underlying suit
are Sunrise Candy, LLC (“Sunrise Candy”), Casas Grandes Confections, LLC (“Casas
Grandes”), Robert J. Whetten (“Whetten”), and David Stewart (“Stewart”).  Sunrise Candy is a Nevada limited liability
company doing business in Texas.  Casas
Grandes is also a Nevada limited liability company doing business in
Texas.  Like Relators, these entities have
offices in El Paso.  Whetten is a
resident of El Paso, who at various times was an executive or board member for
Casas Grandes, Elamex USA, Elamex Mexico, and MFF as well as some other
entities.  Like Whetten, Stewart is a
resident of El Paso, who at various times was also an executive for Elamex
Mexico, Sunrise Candy, and MFF.

The Mexican Real
Property

            At the heart of the
dispute between Plaintiffs and Defendants is a building located in Cuidad Juarez,
Mexico (“the Mexican real property”) used to manufacture candy.  Throughout the litigation, Dulces Arbor has
maintained that it owns the Mexican real property, which it expanded with
financing provided by several lenders, including Bank of the West.[3]  Dulces Arbor attempted to sell the
Mexican real property to several entities affiliated with the Defendants, but
negotiations broke down between Dulces Arbor and Whetten and Stewart and the
sale was never consummated.[4]  The parties disagree about who is to blame
for the failure to reach an agreement. 
In any event, Dulces Arbor’s
assertion that it owned the Mexican real property remained unchallenged until
early last year when Relators claimed in their motion to dismiss for lack of
subject matter jurisdiction that Dulces Arbor had transferred ownership of the
Mexican real property into a trust for the benefit of the lenders, including
Bank of the West.

The Personal Property

            Another dispute between
Plaintiffs and Defendants concerns machinery and computers (“the personal
property”) originally leased by Blueberry Sales from C Leasing Company, a
subsidiary of Bank of the West.  Except
for one computer that remained in El Paso but was nonetheless part of the
manufacturing process, the personal property was installed on the Mexican real
property.  Blueberry Sales eventually
purchased the personal property.

The Leases

            Several leases concerning
the occupancy and use of the Mexican real property play a large role in this
dispute as well.  Originally, Dulces
Arbor leased the Mexican real property to Blueberry Sales.  However, that changed when Blueberry Sales
and another entity named Dulces Blueberry, S.A. de C.V. (“Dulces Blueberry”)
combined assets with another entity to create Simply Goodies, LLP (“Simply
Goodies”).[5]  Following this combination, Dulces Arbor
leased the Mexican real property to Dulces Blueberry.  Simply Goodies acted as guarantor of this
lease.  Although the mandamus record is unclear
as to what exactly occurred, MFF’s maquiladora counterpart, Confecciones de
Juarez, S.A. de C.V. (“Confecciones de Juarez”), currently has a submaquila
agreement with Dulces Blueberry to use the Mexican real property.

The Lawsuit

At the time of this mandamus action, Plaintiffs’
live pleading was their sixth amended petition.  Plaintiffs sued Defendants for fraud,
tortious interference, breach of contract, breach of contract under an alter ego
theory, unjust enrichment, and conspiracy.

Plaintiffs allege
that Defendants committed several types of fraud.  First, Plaintiffs claim that Whetten and
Relators indicated that they wanted to purchase the Mexican real property when
they actually had no intention of doing so. 
Thus, Plaintiffs assert that by inducing them to undertake negotiations
for the sale of the Mexican real property, Whetten and Relators caused them to
forebear from taking actions to protect the Mexican real property and the personal
property.  Second, Plaintiffs claim that Relators
used Delgado to acquire information from them and then used that information
against them, and that Relators referred Delgado to Plaintiffs without
disclosing that he would act adversely to Plaintiffs’ interests.  Third, Plaintiffs claim that Defendants fraudulently
“cheated” them out of “the rent payments, other Lease obligations, and other
rights that Dulces Arbor is entitled to under the contract with Dulces
Blueberry and Simply Goodies.”

As for their
conversion claim, Plaintiffs assert that Relators, both on their own and
through other entities, exercised “unlawful dominion and control” over the
personal property and thus deprived them of the use, enjoyment, dominion, and
control over the personal property.  Plaintiffs
have two tortious interference claims.  First,
Plaintiffs allege that Defendants caused Bridge not to consummate the letter of
credit.  Second, Plaintiffs assert that Relators and others prevented
Dulces Blueberry from performing its obligations under its lease with Dulces
Arbor.

            Plaintiffs
contend that Relators breached a contract with Dulces Arbor in which they agreed
to reimburse Dulces Arbor for $25,000 in attorney’s fees that Dulces Arbor
incurred in pursuing the sale of the Mexican real property.

            As
for their breach of contract claim under the theory of alter ego, Plaintiffs
assert that 

Simply Goodies breached its
guaranty agreement with Dulces Arbor, and the corporate veil of Elamex Mexico should
be pierced to render it liable for the breach.

            As to their claim for
unjust enrichment, Plaintiffs allege that Defendants did not compensate
Dulces Arbor for the use of the Mexican real property to produce candy, which was
sold without further compensation to Dulces Arbor.  Finally, Plaintiffs claim that Defendants,
along with others, conspired to commit the torts described above.

MANDAMUS

            To
obtain mandamus relief from the order denying its motion to dismiss for lack of
subject matter jurisdiction, Relators must meet two requirements.  Relators must show that the trial court
clearly abused its discretion and that they have no adequate remedy by appeal.  In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex. 2004)(orig.
proceeding).

A trial court
abuses its discretion if it reaches a decision so arbitrary and unreasonable as
to constitute a clear and prejudicial error of law.  In re
Cerberus Capital Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005)(orig.
proceeding).  When reviewing the trial
court’s decision for an abuse of discretion, we may not substitute our judgment
for that of the trial court with respect to resolution of factual issues or
matters committed to the trial court’s discretion.  See
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); see also Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242
(Tex. 1985).  However, we are much less
deferential when reviewing the trial court’s determination of the legal
principles controlling its ruling.  See Walker, 827 S.W.2d at 840.  A trial court has no discretion in
determining what the law is or applying the law to the facts, even when the law
is unsettled.  Prudential, 148 S.W.3d at 135. 
A clear failure by the trial court to analyze or apply the law correctly
will constitute an abuse of discretion.  Walker, 827 S.W.2d at 840.

Absent
extraordinary circumstances, mandamus will not issue unless the relator lacks
an adequate remedy by appeal.  In re Van Waters & Rogers, Inc., 145
S.W.3d 203, 210-11 (Tex. 2004)(orig. proceeding).  Whether a clear abuse of discretion can be
adequately remedied by appeal depends on a careful analysis of costs and
benefits of interlocutory review.  In re McAllen Med. Ctr., Inc., 275
S.W.3d 458, 464 (Tex. 2008)(orig. proceeding). 
Because it depends heavily on circumstances, such a cost-benefit
analysis must be guided by principles rather than by simple rules that treat
cases as categories.  See id. 
In addition, we must consider whether mandamus will spare the litigants
and the public “the time and money utterly wasted enduring eventual reversal of
improperly conducted proceedings.”  In re Team Rocket, L.P., 256 S.W.3d 257,
262 (Tex. 2008)(orig. proceeding), quoting
Prudential, 148 S.W.3d at 136.

MOTION TO SEVER

            Relators argue
that the trial court abused its discretion in denying their motion to sever
Dulces Arbor’s claims related to the Mexican real property from Blueberry
Sales’s claims related to the personal property because the claims are separate
and distinct and not so interwoven that they involve the same facts and issues.  Relators further contend that that their
remedy by appeal is inadequate because this Court would not be able to cure the
trial court’s denial of the motion to sever since once the matter has been
tried, the issue of proper forum for the Mexican property issues cannot be
corrected by an appeal.  Because we
conclude that Relators have not shown that the trial court abused its
discretion in denying their motion to sever, we do not reach the issue of
whether Relators have an adequate remedy by appeal.

Standard
of Review

            The
severance of claims rests within the sound discretion of the trial court and is
a question of law.  Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652,
658-59 (Tex. 1990).  When considering
whether to grant a severance motion, the trial court must generally accept the
plaintiff’s pleadings as true and then determine whether severance is
appropriate.  In re Liu, 290 S.W.3d 515, 520 (Tex.App.--Texarkana 2009, orig.
proceeding).  If the trial court’s decision to grant or
deny a party’s severance motion falls within the wide zone of reasonable
agreement, the appellate court reviewing that decision within the context of a
mandamus proceeding should not conclude the lower court abused its discretion.  Id.
at 520.  Given that the trial court must
generally accept the plaintiff’s pleadings as true, the only dispute concerns
the legal consequences stemming from those accepted-as-pleaded facts.  Id.

Applicable
Law

            The
controlling reasons for severance are to avoid prejudice, do justice, and
increase convenience.  F.F.P. Oper. Partners L.P. v. Duenez,
237 S.W.3d 680, 693 (Tex. 2007). 
Severance is proper if three factors exist:  (1) the controversy involves multiple causes of
action, (2) the severed claim would be the proper subject of a lawsuit if independently
asserted, and (3) the severed claim must not be so interwoven with the
remaining action that they involve the same facts and issues.  Guaranty
Fed. Savings Bank. v. Horseshoe Oper. Co., 793 S.W.2d 652, 658 (Tex. 1990); see also Tex.R.Civ.P. 41.

Discussion

            In
this case, there is no dispute between Relators and Real-Parties-in-Interest
that the first two factors are satisfied. 
The mandamus record supports this conclusion as well.  Real-Parties-in-Interest are suing multiple
parties under varying causes of action. Some of the claims sound in tort,
others in contract.  The plaintiffs are
two distinct entities and the defendants include several companies and
individuals.  Thus, we focus our analysis
on the issue of interrelatedness.[6]

            As
discussed above, Real-Parties-in-Interest alleged, in their sixth amended
petition, that Defendants and others conspired to defraud them of their rights
relative to both the Mexican real property and the personal property.  They also maintain this position on appeal.  With respect to having a singular proceeding
involving Blueberry Sales’s conversion claim against Relators and Dulces
Arbor’s tort and breach of contract claims against Relators, the trial court
could have reasonably concluded that a unitary proceeding against Relators was
necessary given the unique posture of this case.

For example, the
trial court could have reasonably concluded that it was just not to sever the
case given the interrelatedness of the corporate defendants to each other and
of the individual defendants to the corporate defendants.  These relationships lend credence to
Real-Parties-in-Interest’s theory that the defendants acted together to take
over their candy manufacturing plant and used the equipment therein to produce
candy.  Similarly, the trial court could
have reasonably concluded that it was more convenient for the parties to
proceed in a single trial rather than in multiple trials because the facts are
so interwoven and complicated.  The trial
court could have also concluded that trying the disputes in multiple suits and
multiple forums would be redundant and a waste of the parties’ and the
judiciary’s resources, since the two trials would consist of the same parties, witnesses,
and evidence.  Likewise, the trial court could
have reasonably concluded that it would have been prejudicial to sever the case
because a heightened possibility existed that two juries in two separate trials
in two separate cases might arrive at two different and conflicting results.  A single trial would eliminate the chance of differing
outcomes.

Based on the factors
outlined above, we hold that the trial court did not abuse its discretion in
denying Relators’ motion to sever.

Motion
to Dismiss Based on Forum Non Conveniens

            Relators next argue that the
trial court abused its discretion in denying their motion to dismiss based on forum non conveniens when it determined
that the general violence in Juarez prevented the city from being an adequate
forum.  Relators further contend that that
their remedy by appeal is inadequate because it is well-settled that as a
matter of law an appeal is inadequate when a trial court erroneously denies a
motion to dismiss based on the common law doctrine of forum non conveniens.  Because
we conclude that Relators have not shown that the trial court abused its
discretion in denying their motion, we do not reach the issue of whether
Relators have an adequate remedy by appeal.

Standard
of Review

The determination
of whether to grant or deny a motion to dismiss on the basis of the common law
doctrine of forum non conveniens is
committed to the sound discretion of the trial court.  Quixtar
Inc. v. Signature Management Team, LLC, 315 S.W.3d 28, 31 (Tex. 2010).  The trial court’s decision is entitled to
great deference and may be reversed only when there has been a clear abuse of
discretion.  Id. at 31, 35.

Applicable
Law

            Forum non conveniens is an equitable
doctrine exercised by courts to prevent the imposition of an inconvenient
jurisdiction on a litigant.  Exxon Corp. v. Choo, 881 S.W.2d 301, 302
n.2 (Tex. 1994).  A trial court will
exercise the doctrine of forum non
conveniens when it determines that, for the convenience of the litigants
and witnesses and in the interest of justice, the action should be instituted
in another forum.  See id. at 302 n.2.

            Because
the common law doctrine of forum non
conveniens presumes that at least two forums are available to a plaintiff, a
trial court must first determine whether an alternative forum exists, inquiring
whether another forum is “available” and “adequate.”  Sarieddine
v. Moussa, 820 S.W.2d 837, 841 (Tex.App.--Dallas 1991, writ denied); Piper Aircraft Co. v. Reyno, 454 U.S.
235, 265 n.22, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981).  If an available and adequate alternative forum
exists, a trial court must then determine which forum is best suited to the
litigation by considering whether certain private and public interest factors
weigh in favor of dismissal.  Sarieddine, 820 S.W.2d at 840, citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91
L.Ed.2d 1055 (1947); Piper Aircraft Co.,
454 U.S. at 265, 102 S.Ct. at 265.

Discussion

            To
the exclusion of any other ground the trial court might have relied upon to
deny their motion, Relators argue that the general violence in Juarez was the “sole
basis” for the trial court’s denial of their motion.  Yet, Relators fail to explain the basis for
their conclusion that the violence in Juarez was the sole reason the trial
court relied upon to deny their motion since the trial court neither issued
written findings of fact and conclusions of law nor stated in its order the
specific ground or grounds it relied upon to deny the motion.[7]
 When a trial court issues an adverse
ruling without specifying its grounds for doing so, the appellant must
challenge each independent ground asserted by the appellee that fully supports
the adverse ruling since it is presumed that the trial court considered all of
the asserted grounds.  U.S. Lawns, Inc. v. Castillo, 347 S.W.3d
844, 847 (Tex.App.--Corpus Christi 2011, pet. filed); Oliphant Financial L.L.C. v. Hill, 310 S.W.3d 76, 77-8 (Tex.App.--El
Paso 2010, pet. filed); Fox v. Wardy,
224 S.W.3d 300, 304 (Tex.App.--El Paso 2005, pet. denied).  If the appellant fails to challenge all
possible grounds, we must accept the validity of the unchallenged independent
grounds and affirm the adverse ruling.  U.S. Lawns, Inc., 347 S.W.3d at 844; Oliphant Financial L.L.C., 310 S.W.3d
at 78; Fox, 224 S.W.3d at 304.  Thus, any error in the grounds challenged on
appeal is harmless because the unchallenged independent ground fully supports
the adverse ruling.  Oliphant Financial L.L.C., 310 S.W.3d at 78.

            Here,
the trial court denied Relators’ motion without specifying its reason or
reasons for denying the motion.  Because
the trial court did not identify its reason or reasons for denying the motion,
Relators bore the burden on appeal to attack each independent ground asserted
in Real-Parties-in-Interest’s response to Relators’ motion that supported the
trial court’s ruling, specifically whether the Gulf Oil private and public interest factors militated in favor of
retaining the case in the trial court. 
Relators failed to do so.

Instead, they focused
on only one ground: the adequacy of Mexico as an alternative forum.  Relators rely on the trial court’s oral statements
as the explanation of the trial court’s reasoning, but cite no authority or
offer any reasoned explanation why this is necessarily so.[8]  We do not dispute that the trial court was
reluctant to require the parties to litigate in Mexico in light of the
unprecedented violence in Juarez. 
However, the trial court’s oral statements, in and of themselves, are
insufficient to determine the ground or grounds the trial court considered in
denying Relators’ motion.  This is
because oral comments from the bench cannot substitute for written findings of
fact and conclusions of law and therefore do not
limit the grounds upon which a ruling can be upheld.  See In
re Doe 10, 78 S.W.3d 338, 340 n.2 (Tex. 2002); In Interest of W.E.R., 669 S.W.2d 716, 716 (Tex. 1984); In re E.A.S., 123 S.W.3d 565, 569 (Tex.App.--El Paso 2003, pet. denied).  Tate v.
Tate, 55 S.W.3d 1, 7 n.4 (Tex.App.--El Paso 2000, no pet.); Ikard v. Ikard, 819 S.W.2d 644, 647
(Tex.App.--El Paso 1991, no writ).  Thus,
it is conceivable that, after reflecting on the matter, the trial court could
have concluded that Mexico was an adequate forum, but that the balance of the Gulf Oil private and public interest
factors did not favor dismissal.[9]  And if this were the case, the trial court
would have been justified in concluding so because sufficient evidence exists
in the mandamus record to tip the balance of the private and public interest
factors in favor of retaining the case, rather than dismissing it.[10]  The point is that we cannot speculate on the
trial court’s reasons for denying the motion and assume that the trial court
did not consider all of the grounds asserted in the response to the
motion.  If we were to do so, we would be
impermissibly usurping the role of the trial judge, who is in a better position
than we to appreciate the case’s nuances and the parties’ circumstances.  See Strather
v. Dolgencorp of Tex., Inc., 96 S.W.3d 420, 422-23 (Tex.App.--Texarkana
2002, no pet.)(explaining that the appellate court may not speculate on the
trial court’s reasons for granting summary judgment and that to do so, the
appellate court would be improperly placing itself in the trial court’s role).

Not only have Relators
failed to establish that the violence in Juarez was the sole basis   the trial
court relied upon to deny Relators’ motion, they have also failed to challenge
a ground that might have been the basis for the trial court’s denial of their
motion – whether the Gulf Oil private
and public factors did not favor dismissal.[11]  Because the trial court’s order can rest on
more than one ground and Relators have not challenged all of those grounds, we affirm
the trial court’s judgment on the grounds to which no error was assigned.  U.S.
Lawns, Inc., 347 S.W.3d at 849;
Oliphant Financial L.L.C., 310 S.W.3d at 78; Fox, 224 S.W.3d at 304.  We
therefore hold that the trial court did not abuse its discretion in denying
Relators’ motion to dismiss based on forum
non conveniens.

CONCLUSION

Relators’ petition for a writ of mandamus is
denied.

 

 

 

May
2, 2012

                                                                                    CHRISTOPHER
ANTCLIFF, Justice

 

Before
McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)

Chew,
C.J. (Senior)(Sitting by Assignment)











[1]
Dulces Arbor and Blueberry Sales are also Third-Party Defendants in the
underlying suit.

 





[2]
In the underlying suit, Raymond Ducorsky
and Brad Ducorsky are Third-Party Defendants, as well as Third-Party Plaintiffs
and Cross-Claimants, whereas Mark Ducorsky is only a Third-Party Defendant.  None of the Ducorskys are a party in this
mandamus action.





[3]
Bank of the West is now WestStar Bank.

 





[4]
Whetten referred the Ducorskys to an attorney in El Paso named Hector Delgado
to represent Dulces Arbor in the negotiations. 
The Ducorskys were apparently unaware that Delgado was representing the
other entities involved in the transaction.





[5]
Bridge Healthcare Finance, LLC, and
Bridge Opportunity Finance, LLC (collectively “Bridge”) provided financing for
this transaction.





[6]
Relators argue that the claims involving the Mexican real property do not
involve the same facts and issues as the claims involving the personal property
and that, although both Dulces Arbor and Blueberry Sales asserted causes of
action for tortious interference, the contracts and relationships allegedly
interfered with involve separate contracts or prospective contracts between
separate entities.  On appeal, however,
Relators only argue that the claims involving the Mexican real property do not
involve the same facts and issues as the claims involving the personal
property.  Thus, we limit our discussion
to this argument.





[7]
Although requested to do so by Relators, the trial court did not issue findings
of fact and conclusions of law.  However,
on appeal Relators do not complain of the trial court’s failure to issue
findings of fact and conclusions of law. 
Indeed, Relators assert in their reply brief that “[a]lthough [they]
requested findings of fact and conclusions of law, they were not absolutely
entitled to have the trial court enter same” pursuant to Rule 296 of the Rules
of Civil Procedure because the trial court issued an order, not a final
judgment following a conventional trial on the merits.  Because we have not been asked to determine
whether the trial court should have issued findings of fact and conclusions of
law in this case, we offer no opinion on this issue.





[8]
Relators do cite Chrysler Corp. v.
Blackmon, 841 S.W.2d 844 (Tex. 1992)(orig. proceeding), and In re Junell, 2000 WL 764144
(Tex.App.--Amarillo June 13, 2000, no pet.) in support of their argument that,
in the absence of written findings or specific recitals in the order, the trial
court’s oral statements regarding the violence in Juarez are sufficient for us
to determine that this was the sole basis upon which the trial court relied to
deny Relators’ motion.  However, Relators
first raise this argument in their reply brief. 
Rule 38.3 of the Rules of Appellate Procedure precludes an appellant
from raising an issue in a reply brief that was not included in the appellant’s
original brief.  Tex.R.App.P. 38.3; Fox
v. City of El Paso, 292 S.W.3d 247, 248-49 (Tex.App.--El Paso 2009, pet.
denied).  An issue raised for the first
time in a reply brief is waived and need not be considered by an appeals court.
 Fox,
292 S.W.3d at 249; Few v. Few, 271
S.W.3d 341, 347 (Tex.App.--El Paso 2008, pet. denied); Gray v. Woodville Health Care Center, 225 S.W.3d 613, 620 (Tex.App.--El
Paso 2006, pet. denied).  Accordingly,
Relators have failed to preserve this argument for review.

 

Even
had Relators preserved this argument for review, we are not persuaded that Chrysler Corp. and In re Junell compel us to conclude that we must accept oral
statements from the bench as the trial court’s basis for its ruling.  In Chrysler
Corp., the Supreme Court recognized that in situations in which an abuse of
discretion standard applies, trial court findings may aid an appellate court in
determining whether the trial court exercised its discretion in a “reasonable
and principled fashion,” and thus encouraged their use.  841 S.W.2d at 852.  In explaining that findings in such
situations were not mandatory, however, the Supreme Court explained:

 

[W]e do
not wish to unnecessarily burden our trial courts by requiring them to make
written findings in all cases in which death penalty sanctions are
imposed.  First, the benefit of the trial
court’s explanation in the record of why it believes death penalty sanctions
are justified may be sufficient to guide the appellate court.

 

Id.  Thus, as is evident when viewed in the proper
context, the Supreme Court was not mandating that in situations where findings
are not required, but may be helpful, that an appellate court accept a trial
court’s oral explanation from the bench as the trial court’s reasoning in the
absence of written findings.  Rather, the
Supreme Court was merely opining that in situations in which it would be unduly
burdensome for a trial court to make formal findings when they are unnecessary,
an oral explanation in the record may
aid the appellate court in determining if the trial court abused its
discretion.

 

In re Junell
is a case in which the trial court granted a severance but did not specify the
grounds in its written order and did not make any formal findings of fact or
conclusions of law.  2000 WL 764144 at
*3.  In concluding that the second and
third prongs for severance had been met, the court of appeals relied upon the
trial judge’s comments from the bench.  Id. at *4.  Notwithstanding the fact that this opinion is
unpublished and has no precedential value, we are not swayed by its
outcome.  The court of appeals cited no
authority or offered any reasoned explanation for its reliance on the trial
court’s oral comments.  More importantly,
nowhere in its opinion does the court hold that that an appellate court must
accept a trial court’s oral explanation from the bench as the trial court’s
reasoning in the absence of written findings.

 





[9]
As enunciated in Gulf Oil, the
private interest factors reflect the private interests of the litigants and
include:  (1) the ease of access to
sources of proof; (2) the availability of the compulsory process for attendance
of unwilling witnesses; (3) the cost of obtaining the attendance of willing
witnesses; (4) all other practical problems, affecting the ease and expense of
the case; and (5) issues related to the enforceability of a judgment obtained
in the forum.  Gulf Oil, 330 U.S. at 508, 67 S.Ct. at 843.  On the other hand, the public interest
factors reflect the interests of the forum and include:  (1) the burden imposed on the citizens of the
state; (2) the burden imposed on the state’s court; (3) the general interest in
having localized controversies decided in the jurisdiction in which they arose;
and (4) the appropriateness in having a diversity case tried in a forum that is
familiar with the law that must govern the case.  Gulf
Oil, 330 U.S. at 508-09, 67 S.Ct. at 843. 
The defendant bears the burden of establishing that the balance of
factors strongly favors dismissal.  Gulf Oil, 330 U.S. at 508, 67 S.Ct. 843.

 





[10]
As to the private interest factors, the record
establishes that many of the parties and key witnesses, who have first-hand
knowledge of whether a conspiracy existed to deprive Real-Parties-in-Interest
of their interest in and the use of the Mexican real property, are located in
Texas and have already been deposed.  For
the few witnesses who reside in Mexico, their testimony can be obtained
pursuant to international treaties without the need for them to travel to
Texas.  See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court of
S.D. of Iowa, 482 U.S. 522, 524, 107 S.Ct. 2542, 2545-46, 96 L.Ed.2d 461
(1987)(Hague Convention on the Service Abroad of Judicial and Extrajudicial
Documents in Civil and Commercial Matters) and Kreimerman v. Casa Veerkamp, S.A. de C.V., 22 F.3d 634, 643 (5th
Cir. 1994)(Inter-American Convention on Letters Rogatory and Additional
Protocol).  The mandamus record also
shows that the parties have secured thousands of pages of discovery, virtually
all of which are in English.  Requiring
translation into Spanish would result in significant cost to the parties and in
further delay.  And, contrary to
Relators’ assertion, the trial court has the authority to issue a judgment
affecting the parties in this case, inasmuch as the trial court is not required
to adjudicate title to the Mexican real property, a conclusion we reached in a
companion case:  No. 08-11-00110-CV.


 

As to the public interest
factors, the burden imposed on the citizens of this state to hear a dispute
involving some Mexican businesses is not great, since a majority of the parties
are American companies and individuals doing business in and residing in El
Paso.  Because it is alleged that the
tortious conduct occurred in Texas, the citizens of Texas have a vested
interest in protecting themselves from such conduct.  In addition, there is a strong general
interest in having this controversy decided in Texas because this dispute is more
properly characterized as an American controversy, notwithstanding the
involvement of some Mexican businesses. 
As mentioned previously, many of the parties and key witnesses are
located in Texas.  Likewise, many of the
defendants have significant contacts with Texas.  The record establishes that the defendants
used bank accounts opened in Texas to transact business in Texas.  The record also shows that the parties had
many communications and meetings in Texas, including the representations and
business negotiations that form the basis of Real-Parties-in-Interest’s claims
in its lawsuit.  Finally, it is
appropriate to try this case in Texas because the trial court is familiar with
the law that will govern the case. 
Although Relators argue that there is no dispute that Mexican law will
apply, this is not entirely accurate.  As
mentioned previously, Relators’ argument hinges on the erroneous premise that
Mexican law applies because this lawsuit involves adjudication of title to real
property interest in Mexico.  But, as
discussed above, we have concluded that there is no issue regarding the
adjudication of title.  Accordingly,
Texas law governs the resolution of Plaintiffs’ contract and tort claims.

 





[11]
Relators do argue that the balance of the Gulf
Oil factors favor dismissal, but they do so in their first reply
brief.  However, as explained in footnote
eight, Relators waived this argument on appeal because they raised this issue
for the first time in a reply brief and not in their original brief.  Fox,
292 S.W.3d at 249; Few, 271 S.W.3d at 347; Gray, 225 S.W.3d at 620.